DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY'

### NOVEMBER TERM, 1921.

EMANUEL M. KATZ, PLAINTIFF IN ERROR, v. HENRY E. ELDREDGE ET AL., DEFENDANTS IN ERROR.

AUGUST CARELL, APPELLANT, v. JAMES W. McCARTHY, RESPONDENT.

DOMINICK SINISI, APPELLANT, v. JOHN J. McGOVERN, RESPONDENT.

Argued December 22, 1921—Decided February 2, 1922.

1. The act entitled "An act concerning intoxicating liquors used or to be used for beverage purposes," passed March 29th, 1921 (*Pamph. L.*, *p.* 171), the short title of which is "Prohibition Enforcement act," commonly called the Van Ness act, authorizing convictions for violations of. its provisions by magistrates without trial by jury, violates article 1, section 7 of the constitution of New Jersey of 1844, which provides *inter alia* that the right of trial by jury shall remain inviolate; and also *Ib.*, section 9, which provides *inter alia* that no person shall be held to answer for a criminal offence unless upon the presentment or indictment of a grand jury.

(123)

2. The Van Ness act is invalid to the extent that it makes violations of its provisions disorderly acts as distinguished from those which are criminal in their nature, because, prior to its enactment, the congress of the United States had already declared by necessary implication in the federal statute, commonly known as the Volstead act, that a person who violated any provisions of the eighteenth amendment to the federal constitution should be guilty of crime. ·

3. The Van Ness act violates article 4, section 7, paragraph 4 of the constitution of New Jersey, which provides that every law shall embrace but one object and that shall be expressed in the title.

4. The provisions of the Van Ness act making the Supreme Court justices and Common Pleas judges magistrates, and requiring them to enforce the act in given proceedings, imposes upon them duties which do not inhere in, or pertain to, their judicial office, and are therefore void.

On error in Katz case, and appeals in the Carell and Sinisi cases, from the Supreme Court, whose opinion is reported in 96 *N. J. L.* 382.

For the appellants, *Robert H. McCarter, William Elmer Brown, George W. C. McCarter* and *Warren Dixon.* .

For the respondents, *George T. Vickers, Pierre P. Garven, J. Henry Harrison, Wilbur A. Mott, William A. Newcorn.* and *Charles A. Wolverton.*

WALKER, CHANCELLOR (for reversal). I come at once to the point as to whether or not the Van Ness act is invalid, in that it violates the mandate of the constitution of 1844 that the right of trial by jury shall remain inviolate, which counsel terms the fundamental question. Our constitutional provision (article 1, section 7) is:

"The right of a trial by jury shall remain inviolate; but the legislature may authorize the trial of civil suits, when the matter in dispute does not exceed fifty dollars, by a jury of six men."

In the constitution of 1776, we find this provision (article 22, section 7) :

"And the inestimable right of trial by jury shall remain confirmed, as part of the law of this colony, without repeal, forever."

The manufacture, transportation or sale of liquor is not an indictable offence at common law; nor has it been made indictable in our state. The Van Ness act provides that any person who violates any of its provisions shall upon conviction be adjudged a disorderly person and shall be sentenced by a magistrate created by that act to be confined in the workhouse, penitentiary or common jail, or to pay a fine not to exceed $500, or both, in the discretion of the magistrate, and also to pay the costs.

It is to be noted that the constitutional provisions mentioned are preservative of existing and not declaratory of new rights. This is obviously so both from the language used and the state of the law at the time of the adoption of those instruments. Numbers of our cases so decide.

Counsel for appellant contends that if an offence is essentially criminal, a jury can be dispensed with only if the case is within one of the historic exceptions to the right of trial by jury. Those exceptions are—criminal contempts of court, trials by courts-martial and summary convictions by magistrates. The latter were unknown to the common law and are wholly the creature of statute. 4 *Bl. Com.* *280. And they are for minor and petty offences and violations of police regulations. *McGear* v. *Woodruff,* 33 *N. J. L.* 213; *Howe* v. *Plainfield,* 37 *Id.* 145.

The offences created by the Van Ness act are not triable before inferior magistrates, but by a judge of the Common Pleas, who is judge of the Quarter Sessions; and jurisdiction, in certain circumstances, is conferred on justices of the Supreme Court, although the judges of both classes are denominated "magistrates" by the act.

It is here pertinent to inquire how severe were the punishments which could be inflicted in this commonwealth for petty offences triable by magistrates before the adoption of the constitution of 1776.

In 1748 an act was passed whereby justices of the peace of Middlesex county were empowered to imprison at hard labor not exceeding *one month* all rogues, vagrants, vagabonds and sturdy beggars, and other idle and disorderly persons. *Alli.* 179, § 15. In 1754 a substantially identical act was passed for the borough of Elizabeth. *Id.* 198, § 6. In 1799 an act was passed providing for the commitment of an offender summarily convicted by a justice of being a disorderly person to the *workhouse* at hard labor for not more than three months. *Elm. Dig.* 585, § 3. This act extended to the state at large the powers exercisable by magistrates in Middlesex and Elizabeth, and is substantially the same as the "Disorderly act" of our own day. See *Comp. Stat., p.* 1926.

Now, as seen, the longest term of imprisonment imposable by a magistrate upon an offender on a conviction by him without the intervention of a jury, prior to the constitution of 1776, was *one month,* and after 1779 up to the constitution of 1844, *three months.* It may be that incarceration in excess of one month is invalid, as the only act denouncing imprisonment in excess of that term was passed after the constitution of 1776, which provided that the inestimable right of trial by jury should remain confirmed, which is the same thing as the provision in the constitution of 1844 that the right of trial by jury shall remain inviolate, but in other words. Both uphold and protect existing right and provide for its continuance. It is unnecessary to pass upon the question thus suggested—that is, whether a term of more than one month was constitutionally excessive, for, at the time of the adoption of the constitution of 1844, three months was the term limit, seemingly unquestioned, but the act under review doubles it. It is no answer to say, that as the offences created by the Van Ness act were not indictable offences at common law, therefore a jury trial is not a necessary concomitant of the prosecution of an alleged offender against any of its provisions. No one, I think, will contend that jury trials are restricted to criminal offences at common law, or that for a crime created by statute—no matter how reprehensible the offence or severe the penalty—the offender may legally be tried by a single

judge with power to convict and imprison him for perhaps a term of years and fine him perhaps hundreds or thousands of dollars. Such a proposition would violate both the letter and the spirit of our constitutional guarantees of liberty and property, and shock our sense of natural justice as well. If the constitutional limit by way of maximum term of imprisonment on conviction by a magistrate without a jury is three months, then the legislature can no more extend that term to six months than it can to six years. Unless the line of demarcation is drawn in strict conformity to constitutional limitation, and if the legislature is untrammeled in the extent to which it may prescribe imprisonment as a punishment for offences triable by a magistrate without a jury, then, of course, it can go all lengths, as it apparently has done. See the act of 1921 relating to motor vehicles (*Pamph. L., p.* 643), which provides penalties by way of fine up to $1,000, and imprisonment for as long as fifteen years, with trial of offenders before magistrates, including justices of the peace, judges of city criminal courts, police justices, recorders, mayors and other officers having power of committing magistrates, and with all the powers of those officers conferred upon the commissioner of motor vehicles as an extra magistrate to enforce the provisions of the act.

The question of the legality of a sentence of a magistrate in excess of the time limit of the imprisonment he may inflict under a conviction had before himself, sitting with a jury, includes also the amount of fine he may impose upon the person so convicted, which was $16, down to the time of the adoption of the constitution of 1844. In *State* v. *Zeigler,* 32 *N. J. L.* 262, Mr. Justice Elmer said that $16 was the largest penalty that could be recovered before a justice of the peace sitting without a jury, in summary proceeding, at the time of the adoption of the constitution of 1776, and he expressed doubt as to whether a pecuniary penalty exceeding that amount could then (1867) be enforced without a jury trial. And Mr. Justice Van Syckel, in *Unger* v. *Fanwood,* 69 *Id.* 548, said that the question did not arise in that case whether a jury may be demanded when the penalty exceeds

$16, thus indicating that as late as 1903 that learned jurist considered the question perhaps an open one. That was the highest fine which could be imposed under the Vice and Immorality act.

It is true that in *State* v. *Lakewood Market Co.*, 84 *N. J. L.* 512, Mr. Justice Trenchard, speaking for the Supreme Court, observed (at *p.* 524) :

"The prosecutor claims, however, that the doctrine of the cases. above cited [cases holding that in summary proceedings for collection of penalties neither party is entitled to a jury trial] does not apply to the case at bar, because of the size of the penalty recovered in this case. He bases his claim upon a *dictum* of Mr. Justice Elmer in *State* v. *Zeigler,* 3 *Vr.* 262, and upon the rule adopted by the Supreme Court of New Hampshire in the cases cited by him. This *dictum* of Mr. Justice Elmer was referred to in McGear *v.* Woodruff, and in this connection attention was called to the fact that in the case of *Johnson* v. *Barclay, supra,* the Supreme Court sustained a summary conviction before a justice of the peace without a jury in a case in which the penalty exceeded $16.

"The validity of a provision for the collection of a penalty by summary proceedings, without a jury trial, depends, not upon the amount of the penalty to be so recovered, but upon the character of the statute to be so enforced and upon the nature of the offence for which such penalty is provided. This is apparent from a reading of the decisions. It is the rule which has been generally adopted by the courts of other states and approved by the text-book writers."

As to Mr. Justice Trenchard's allusion to Johnson *v.* Barclay as having been a decision by the Supreme Court that in a summary conviction before a justice without a jury a penalty in excess of $16 was to be sustained, it will be found upon looking at the case (*Johnson* v. *Barclay,* 16 *N. J. L.* 1) that the penalty imposed in the conviction was $16 and $1 costs. The court in that case says nothing whatever about the amount of the penalty, and only this on the question of trial without a jury :

"The justice refused a trial by jury. In doing so, the justice was right. Convictions before a justice were in practice in this state long before the constitution [of 1776] was formed —by the twenty-second article of that instrument, the trial by jury was to 'remain confirmed' as part of the law of this [then] colony; but it was not introduced as a *new* mode of trial in all cases—it was adopted, or rather continued, as it was then used in England and in this colony, and was not at that time, either there or here, resorted to in cases of summary proceedings and convictions for petty offences."

The prosecution in State v. Lakewood Market Co. was upon a complaint that the defendant did unlawfully have in possession twenty-eight ducks, contrary to the provisions of the act for the protection of certain kinds of birds, game and fish, &c., in violation of section 8 (*Pamph. L.* 1903, *p.* 528), which denounces a penalty of $20 for each duck, &c., so possessed; and Mr. Justice Trenchard (at *p.* 521) states that the penalty named in the summons was $560, the total of the penalties for the birds unlawfully possessed, at $20 for each bird. Now, there can be no doubt that the defendant could have been prosecuted for the possession of each particular bird in a separate action, as each was a separate offence; but that the offences could be combined into one action and a penalty of $560 recovered, I think was doubtful. The offences, it seems to me, were entirely separable. All the ducks may not have been acquired in the same way, and certain defences may have existed as to some of the offences and certain other defences as to others of them. However, this question is not involved. Mr. Justice Trenchard, in the Lakewood Market Co. case, thus disposes of this question (at *p.* 523):

"Furthermore, the section of the act under which the defendant in the present case was convicted does not confer an unlimited jurisdiction. It provides that any person violating it shall be liable to a penalty of $20 for each duck had in possession. The complaint charged the defendant with having in possession twenty-eight ducks. A penalty of $560 was imposed. This was in effect a joint trial and conviction on a number of single complaints. In any aspect it is quite com-

mon and is not unconstitutional as conferring upon the justices of the peace an unwarranted jurisdiction."

The reasoning of this case does not, I think, justify the conclusion that a penalty of $560 can be lawfully recovered before a magistrate sitting without a jury. And I affirm that it cannot.

There are two classes of offences under our law—one triable by a jury only and the other by a magistrate without a jury. As to existing offences the line of demarcation is known, because the law places them in one or the other category; and this quite irrespective of the penalties denounced. When, however, a new offence is created by statute it must inherently and of its own nature fall within one or the other; and the question always is, which one? The touchstone is the constitution, and that provides that the "right of trial by jury shall remain inviolate." Therefore, if the punishment denounced is greater than that which could have been imposed upon conviction by a magistrate without a jury at the time of the adoption of the constitution, it can be imposed now only upon the verdict of a jury, because it could not then have been imposed without it; and it falls per force into the class of cases triable by jury. Therefore, it clearly appears, as the punishment meted out to the defendants Katz and Sinisi was greater than is allowable by the constitution on a conviction by a magistrate without a jury, the judgments must be reversed, as the statute which authorized them is unconstitutional in that regard.

It is almost superfluous to say that the proceedings under review are void because there has been no indictment, as that is a mere corollary to the proposition that they are void because the defendant was denied the right of trial by jury. No one can be put upon trial before a traverse jury in New Jersey for the commission of a crime unless upon the presentment or indictment of a grand jury, except in cases of impeachment or in cases cognizable by justices of the peace (or certain military or naval cases). *Art.* 1, § 9, *Const.* 1844. The expression "except in cases * * * cognizable by justices of the peace" is most significant. It is a declaration that

the class is not to be extended, for the language is "cognizable"—not those that may be made cognizable—that is, that offences which were at the time of the adoption of the constitution of 1844 then triable by a magistrate without a jury were to continue so, and that the penalties were not to be enlarged.

In *State* v. *Anderson,* 40 *N. J. L.* 224, in which two indictments were under review, one for the sale of ardent spirits without a license and the other for keeping a disorderly house, Chief Justice Beasley observed (at *p.* 227):

"Article 1, section 9 of that instrument [the constitution] declares that 'no person shall be held to answer for a criminal offence unless on the presentment or indictment of a grand jury, except in cases of impeachment, or in cases cognizable by justices of the peace,' &c. The purpose of this clause was to prevent the bringing of any citizen under the reproach of being arraigned for crime before the public, unless, by a previous examination taken in private, the grand inquest had certified that there existed some solid ground for making the charge. It took from the law officer of the state, the attorney-general. one of the established prerogatives of his office. that of filing his information against supposed offenders, and thus putting them on trial at his own volition. The reputation of every man was thus put under the care of a single specified body. The language of the constitutional clause is very comprehensive, and the specified exceptions show conclusively that it was intended to cover the residue of the entire field of criminal accusation. In the presence of such a prohibition, how then is it permissible to put a man on trial before a city court, charged with this common law offence, without the preliminary sanction of a grand jury? If it be said the punishment is only a fine, the answer is, the restraining clause in question has nothing to do with the result or effect of the trial, its object being to save from the shame of being brought before the bar of a criminal court, except in the authorized method after an antecedent inquisition. I am clearly of opinion that a trial of a person for this offence before the municipal court would be an act utterly void."

And (at *p.* 228) :

"With regard to the other indictment, the questions involved are of a different character. The offence of selling liquor without a license is a purely statutory offence. Independently of a prohibition by the legislature, such a sale is neither immoral nor illegal, and the lawmaker, therefore, can put it under such control as may be thought best. Not being in its nature an indictable offence, it can be made punishable by a penalty, without indictment. Such is the effect of the present law in certain localities, and I can perceive nothing unconstitutional or illegal in such an arrangement. This law, therefore, which gives the exclusive right of prosecution and punishment to the city of Paterson in this case is valid and must be sustained."

Of course, when the learned Chief Justice observed that the offence of selling liquor unlawfully, not being in its nature an indictable offence, the lawmaker could put it under such control as may be thought best, and that it could be made punishable by a penalty without indictment, did not mean that when a statute prescribing a penalty without indictment and trial by jury for such an offence was enacted, it could make the penalty greater than inherently it could be made for a statutory offence triable before a magistrate without a jury. The question of the extent of the penalty was not involved in the case; and courts decide only question which are raised before them.

As a defendant convicted by a magistrate in a summary proceeding at the time of the adoption of the constitution of 1844 could not be sentenced to confinement for more than three months, and, so far as I have been able to ascertain, could not be fined in excess of the sum of $16, I am of opinion that punishments in excess of those cannot be lawfully inflicted now without indictment and trial by jury, unless both are waived. Maybe three months' imprisonment is all that ought to be permitted to a magistrate sitting without a jury to impose. As to the fine of $16 that may be imposed in summary proceedings, that appears to be small, indeed, but that limit seems to be the inexorable logic of the law. If this is not

so, where is the line to be drawn? As I remarked above, if the legislature can make the imprisonment six months it can make it six years. And if it can make the fine upwards of $16 it can make it $600. Why not? Where is the trammel on legislation if it does not reside in the constitutional provision that the right of trial by jury shall remain inviolate, and if this does not mean that only those prosecutions for petty offences can be had before magistrates without a jury, which, before the adoption of that instrument, were so triable? As I said before, when the legislature creates a new offence it must of necessity fall within the class of those triable by jury or those triable without a jury; and I affirm that in favor of human liberty and due process of law, no newly-created statutory offence can be lawfully made disorderly conduct when the penalties denounced are those imposable for the commission of crime.

Much argument was devoted to the contention that the Van Ness act was void because of the place of detention provided for one convicted of violating any of its provisions, namely, the penitentiary or common jail, as well as the workhouse, because by the acts of 1748, 1754 and 1799, imprisonment inflicted by magistrates could be in the workhouse only. On this question I express no opinion, although in *State* v. *Ellis* (1857), 26 *N. J. L.* 219, and *Fairbanks* v. *Sheridan* (1881), 43 *Id.* 484, sentences of disorderly persons to county jails were declared void by the Supreme Court on the ground that they could lawfully be sentenced to *workhouses* only. It may well be that the legislature may lawfully prescribe that a disorderly person be confined in the county jail, penitentiary or workhouse, as it does in the present act; but, if so, it must be for a term which may be constitutionally imposed. In *Brown* v. *State,* 62 *Id.* 666 (at *p.* 695), Mr. Justice Depue held that the grade of an offence in our criminal code is determined by the character and degree of the punishment prescribed, rather than upon the common law classification of felonies and misdemeanors. On the subject of infamous punishment making an offence criminal, see *Ex parte Wilson,* 114 *U. S.* 417, and *Makin* v. *United States,* 117 *Id.* 348.

Appellants also contend that the Van Ness act is invalid because its title is constitutionally defective, in that it does not express a single object embraced in the act itself, but that the act embraces more than one object. The constitutional provision invoked (article 4, section 7, paragraph 4) reads:

"* * * every law shall embrace but one object, and that shall be expressed in the title."

It is argued in this behalf that section 24 alters the substantive rights existing between landlord and tenant by providing that any violation upon any leased premises shall give the lessor the right of re-entry; that section 55 gives a cause of action to any person injured by an intoxicated person, or by reason of the intoxication or sale of liquor to any person in violation of the act; and that certain sections create a new tribunal, namely, a Common Pleas judge, and, in certain circumstances, a justice of the Supreme Court, who are created "magistrates" with power in prescribed procedure to try without a jury alleged offenders against the act and to convict and sentence them.

In *Jonas Glass Co.* v. *Ross,* 69 *N. J. L.* 157, the Supreme Court held that an act entitled "An act concerning District Courts (Revision of 1898)," could not constitutionally change the relative rights of landlords and tenants; and, in *Rader* v. *Township of Union,* 39 *Id.* 509, the same tribunal held that an act entitled "An act in relation to streets in Union township, Union county," could not validly create a corporation to take charge of the streets. Chief Justice Beasley in this case observed (at *p.* 515):

"It is true that it may be difficult to indicate, by a formula, how specialized the title of a statute must be; but it is not difficult to conclude that it must mean something in the way of being a notice of what is doing. Unless it does this, it can answer no useful end. It is not enough that it embraces the legislative purpose—it must express it; and where the language is too general, it will accomplish the former but not the latter."

Cases other than these might be cited, but it is unnecessary to do so. If, as in Jonas Glass Co. *v.* Ross, an act concerning

District Courts could not authorize a change in the rights of landlord and tenant, the act under consideration entitled "An act concerning intoxicating liquor used or to be used for beverage purposes" cannot affect the substantial rights of landlord and tenant; and if, as in Rader *v.* Township of Union, an act in relation to streets could not validly create a corporation to take charge of them, the Van Ness act cannot validly create a special statutory tribunal in which to try those who violate its provisions. This is not the view that the act is invalid because it imposes upon the judges who are directed to enforce it duties which do not inhere in, or appertain to, their judicial offices. My objection goes solely and only to the effect that the title does not and cannot permit of the act setting up a special statutory tribunal. As this view leads to the conclusion that the act is invalid because its title is constitutionally defective, it becomes unnecessary, therefore, to discuss other reasons advanced to show that this is so.

In passing it may be well to remark that counsel for appellant is doubtless correct in his assertion that a prohibition enforcement act properly entitled might constitutionally provide penalties for its violation. This would appear from the decision of this court in *State* v. *Twining,* 73 *N. J. L.* 683, wherein it was held that the title of an act concerning trust companies includes in its expressed object not only regulation but also provision to enforce regulation by penalties and prosecution. And it may also be stated that the state's contention on this head that it must be presumed that the legislature intended to pass a valid law and that the act must be sustained if there be a permissible view of its constitutionality, and the cases cited by counsel, do not answer the challenge of the appellants, supported as it is by the cases above cited.

It is contended by counsel for appellant that as the acts made punishable by the Van Ness act are those violative of the eighteenth amendment to the constitution of the United States, and which, under the federal enforcement statute, known as the Volstead act, are made crimes, that, therefore, it is unlawful for the New Jersey legislature to enact a statute

making those violations anything less than criminal. It strikes me that this is *non sequitur*. The enforcement provision of the eighteenth amendment is:

"The congress and the several states shall have concurrent power to enforce this article by appropriate legislation."

Enforcement, therefore, resides in a grant of power and is not enjoined as a duty. New Jersey need not have passed any enforcement act, and could have left the field wholly to federal endeavor under the Volstead act. Where is there a single word in the amendment which prescribes the kind of prosecution or the character of penalties for its violation? There is none. Where is any power lodged in federal or state governments to coerce the legislative body in respect to the statutes it may pass? There is none. Parliaments cannot be *mandamused* or coerced in any way. If they refuse to do their duty they cannot be punished. There is no direction in the amendment, express or implied, that the states shall copy the enforcement act or acts, if any, of the federal government; and, if there were, it would be unenforceable. There is nothing in the *National Prohibition Cases, 253 U. S.* 350, which even hints at such a thing. It is a matter entirely within the power and discretion of the state legislature. The federal congress can make violation a crime, as it has done; and the New Jersey legislature can make it a disorderly act, which it has attempted to do—the trouble with the act of the legislature being that in terms it makes violations disorderly conduct, while making them crimes, in effect, by reason of the sanctions or penalties annexed to the offences denounced, which operate to render the enactment void, because, both as to fine and imprisonment, they exceed constitutional limitations.

In *Howe* v. *Plainfield, 37 N. J. L.* 145, wherein it was held that the same act may constitute an offence both against the state and a municipal corporation, and both offences may be punished without violation of any constitutional principle, Mr. Justice Dalrimple, speaking for the Supreme Court, observed (at *p.* 150):

"In the case of *Moore* v. *People of Illinois, 14 How.* 13 (55 *U. S.* 13; 14 *Law Ed.* 306), it was held that the same act may

be an offence against a state and against the United States. In that case it appears that one Eels was indicted and convicted under the statute of Illinois for unlawfully secreting a certain negro slave, owing service to a citizen of the State of Missouri. A writ of error was brought to the Supreme Court of the United States, and the legality of the conviction questioned, on the ground that the statute of Illinois was void, because it subjected the offender to a double punishment for a single offence. The argument urged was, that inasmuch as the act for which the defendant stood indicted in the state court was one for which he was punishable by act of congress, if proceedings under both statutes were allowed to stand, double punishment would be inflicted. The court denied both the fact assumed in the proposition and the inference sought to be drawn from it. Mr. Justice Grier, delivering the opinion of court, says: 'But admitting that the plaintiff in error may be liable to an action under the act of congress for the same act of harboring and preventing the owner from retaking this slave, it does not follow that he would be twice punished for the same offence. An offence, in its legal signification, means the transgression of a law. A man may be compelled to make reparation in damages to the injured party, and be liable also to punishment for a breach of the public peace in consequence of the same act; and may be said, in common parlance, to be twice punished for the same offence. Every citizen of the United States is also a citizen of a state or territory. He may be said to owe allegiance to two sovereigns, and may be liable to punishment for an infraction of the laws of either. The same act may be an offence or transgression of the laws of both.' These views of the learned judge, so clearly expressed, seem to me to embrace and settle the whole subject under consideration."

Howe v. Plainfield is one of a series of cases holding that one and the same act may be an offence against the criminal law of the state and also the by-laws or ordinances of a particular municipal corporation, and may be punished under both authorities; and it will be observed that the opinion of the court was to the effect that an offence against a federal law

might be an offence against a state law also, and punishable in both jurisdictions, and this was said to embrace and settle the subject.

In *Williams* v. *United States*, 255 *U. S.* 336, the late Chief Justice White, delivering the opinion, observed that in Clark Distilling Co. *v.* Western Maryland Ry. Co., the Webb-Kenyon law, which prohibited the movement in interstate commerce into any state of intoxicating liquor for purposes prohibited by the laws of such state, was sustained; that any want of uniformity which might arise in its operation caused from difference in the laws of the several states was to be attributed to such divergent state laws and not to any inherent want of uniformity in the act of congress.

It appears to me, therefore, that there need not be uniformity in the act of congress and the act of the state looking to the enforcement of the eighteenth amendment to the federal constitution, but that each government operating within its respective sphere may set up its own regulation.

These observations are made for the purpose of showing that the state enforcement act need not conform to the federal one; while, of course, it must not conflict in anywise with the constitutional amendment. It follows, therefore, in my opinion, that no invalidity resides in the Van Ness act in so far as it makes, or attempts to make, violations of the amendment disorderly conduct instead of crimes. Its invalidity consists on this score, in that its sanctions and penalties are those which may be lawfully visited upon crimes only, and not upon mere disorderly acts against the police power of the state. And these views and the cases supporting them are in harmony with the recent case of *State* v. *Rogers*, 91 *N. J. L.* 212, wherein this court held:

"The legislature has power to provide for the punishment of an offence which is disorderly conduct merely and not for an offence indictable at common law, by summary proceedings without indictment and trial by jury."

And further:

"The evidence admitted upon the trial of a proceeding under the supplement of 1913 to the Disorderly Persons act (*Pamph.*

*L.* 1913, *p.* 103) cannot change the character of the offence charged from mere disorderly conduct to a public or common nuisance. The character of the offence is determined, not by the evidence which may be legally *admissible* under the complaint, but by the charge and the evidence which is *requisite to sustain* the charge."

Yes, the charge and not the evidence is the thing that determines the offence. To charge a man with assault and battery is to charge him with a crime. To charge him with being a vagrant is to charge him with disorderly conduct.

In the Rogers case the complaint was for disorderly conduct, and this court held further that a man might be convicted of disorderly conduct even if his offence extended further and amounted to a crime. There seems to be a perfect analogy between the state of our law which permits the prosecution of a person as for a disorderly act when that constitutes a crime, and a prosecution under a state prohibition statute as for a disorderly act, while the federal statute makes the same act a crime.

The extent of the penalty under the act reviewed in State *v.* Rogers was imprisonment for not less than thirty days or more than six months. The question of excessive penalty, however, was not involved—that is, there was no decision to the effect that the maximum penalty of six months was a valid punishment for disorderly conduct imposable by a magistrate without a jury. And this is so with reference to our cases generally; the question always being whether or not the offence was criminal or disorderly conduct, and not whether the penalty denounced for disorderly conduct was constitutionally excessive. That question appears now to be sharply raised for the first time, although it was hinted at in *State* v. *Zeigler* and *Johnson* v. *Barclay, supra.*

Because the title of the act is constitutionally defective, and because the fine and imprisonment inflicted upon the defendant under that act exceed constitutional limitations, I am clearly of opinion that the judgments under review must be reversed. This disposes of the cases of Katz and Sinisi, in which writs of *certiorari* were issued after defendants' convic-

tions, and which writs, therefore, were in the nature of writs of error at common law. In the Carell case the writ of *certiorari* was issued one day before that set for defendant's trial, and arrested the proceedings, and there was therefore no conviction in that case. It is argued on behalf of the state that this writ was improvidently issued and should be dismissed, because when the function of a *certiorari* is in the nature of a common law writ of error it will not lie before judgment (in cases which cannot be continued and completed by the Supreme Court), citing *Crawford* v. *Hendee*, 95 *N. J. L.* 372; *State, Hoxsey, prosecutor,* v. *Paterson,* 39 *Id.* 489; *Farrow* v. *Springer,* 57 *Id.* 353, and other cases. ·

While it was held in the Hoxsey case that a *certiorari* will not be allowed before final decision in cases where the office of the writ is in the nature of a writ of error, it was further held that this is not applicable to the writ when designed for a review of municipal proceedings, in which cases the time for its allowance is discretionary; and the writ in that case was one to review municipal proceedings. In the Farrow case a *certiorari* was allowed to review the act of a police justice in issuing a search warrant; and it was held that such action would not be questioned or reviewed by *certiorari*. Chief Justice Magie, who wrote the opinion for the Supreme Court, observed that he could find no trace of the use of the writ to remove warrants of magistrates in criminal cases or the proceedings thereunder, prior to the finding of an indictment, and that the writ is then obviously used to remove the record with the object of proceeding upon it in the Supreme Court.

In Crawford *v.* Hendee a *certiorari* was allowed to review the action of the mayor, &c., of Wildwood, in instituting proceedings against the chief of police for a violation of duties; the writ was procured before the day for hearing the charges, and was served before a decision had been announced; and that writ was dismissed on the ground that the Supreme Court had nothing to review. But in *Croasdale* v. *Atlantic Quarter Sessions,* 88 *N. J. L.* 506, a *certiorari* was allowed to remove an attachment awarded for an alleged contempt of court. Of course, the proceedings in the Quarter

Sessions were not ended with the issuing of the attachment. That is a bailable writ. But Mr. Justice Parker, who wrote the opinion, observed that the award of the writ before the determination of the proceedings was supported by the fact that the attack was on the *jurisdiction of the court over the subject-matter,* citing *Palese* v. *Lane,* 95 *Atl. Rep.* 126, and *Mowery* v. *Camden,* 49 *N. J. L.* 106. And there is no conflict between these cases and the Crawford, Hoxsey and Farrow cases.

In the Palese case it was held:

"When the purpose is to review the proceedings of a special tribunal, on complaint of irregular procedure in matters within its jurisdiction. *certiorari,* while it may issue before, should not ordinarily be allowed until final decision, but when the purpose is to reverse the proceedings in matters not within the jurisdiction of special tribunals, *certiorari* may, and ordinarily should, be allowed either before or after final decision, as each step in such proceedings is an unlawful vexation of the party prosecuted, against which the writ is his sole protection."

And in the Mowery case it was held:

"When a special tribunal is proceeding summarily in a matter over which it has not legally acquired jurisdiction, it is within the discretion of this court to allow a *certiorari* to review its action before the final determination of the matter."

These declarations make it clear that *certiorari* was an available remedy to Carell. His liberty and property were attacked in proceedings which were unconstitutional, and he had therefore a right to challenge those proceedings *in limine* by writ of *certiorari.* The Supreme Court's dismissal of the *certiorari* in the Carell case should therefore be reversed.

The views above expressed lead to a reversal of the judgments in all three cases.

I am authorized to state that Mr. Justices Swayze and Kalisch and Judges Ackerson and Van Buskirk concur in the view that the act in question is invalid because it denies the right of trial by jury in violation of the constitution; and that Mr. Justice Kalisch concurs in the view that the act vio-

lates the constitutional provision that every law shall embrace but one object and that shall be expressed in the title; and that Mr. Justice Black concurs in the view that the *certiorari* in the Carell case was properly issued before judgment.

GUMMERE, CHIEF JUSTICE.    The people of the United States, in the year 1919, adopted the eighteenth amendment to the federal constitution.    The first and second sections thereof are in the following words:  "Section 1:  After one year from the ratification of this article the manufacture, sale or transportation of intoxicating liquors within, the importation thereof into or the exportation thereof from the United States and all territory subject to the jurisdiction thereof, for beverage purposes, is hereby prohibited.    Section 2:    The congress and the several states shall have concurrent power to enforce this article by appropriate legislation."

In the exercise of the power conferred by the second section, the congress enacted on October 28th, 1919, the National Prohibition act, popularly known as the Volstead law. As I read that act, the two fundamental provisions contained in it are (1) that liquor having one-half of one per cent. or more of alcohol by volume shall be held to be an intoxicating liquor, within the meaning of the first section of the amendment; and (2) that any person who violates the provisions of section 1 of the amendment shall be deemed guilty of a criminal offence, shall be prosecuted for the crime, and in case of conviction shall be punished accordingly.

On March 29th, 1921, the legislature of this state passed an act entitled "An act concerning intoxicating liquor used or to be used for beverage purposes" (*Pamph. L.* 1921, *p.* 171), and commonly designated as the Van Ness act.  By this statute the legislature adopts the language of the Volstead act in defining what shall constitute intoxicating liquor within the meaning of the eighteenth amendment;  and prohibits the manufacturing, selling, bartering, transporting, importing or exporting of any such liquor—with certain exceptions not pertinent to the consideration of the present cases;  and declares that any person who shall violate this

prohibition shall, upon conviction thereof before a magistrate, be deemed and adjudged to be a disorderly person and subject to punishment as such.

Under this state statute a large number of prosecutions were instituted against persons alleged to have violated its prohibitory provisions; and, for the purpose of determining its validity, writs of *certiorari* were allowed to review these prosecutions. Upon final hearing in the Supreme Court that tribunal upheld the validity of the state and judgments of affirmance were entered in the three cases now before us.

Many reasons are assigned before us by counsel for appellants for holding the Van Ness act invalid, most of which are rested upon the contention that it violates various provisions of our state constitution. But, in my opinion, the questions of primary importance which the cases present are, first, whether this act is in conflict with the federal statute so far as it declares that violations thereof shall be considered mere acts of disorder, whereas congress has declared that the same violations shall constitute the offender a criminal, and second, if the provisions of the act are to this extent in conflict with the legislation of the congress, whether, notwithstanding such antagonism, the state statute can be upheld.

That these two legislative enactments are antagonistic the one to the other seems to me to be indisputable; so much so, in fact, as the statute of this state passed March 2d, 1920 (*Pamph. L., p.* 14), which defined "intoxicating liquor" to be any alcoholic beverage containing more than three and one-half per cent. of alcohol by volume, was antagonistic to what I consider the other fundamental provision of the Volstead act.

Having reached this conclusion, I proceed to the consideration of the question whether or not, to the extent indicated, the state statute is invalid.

The Supreme Court undertook to sustain the Van Ness act upon the theory that it was passed by the legislature in the exercise of the police power of the state, and that this power had never been surrendered to the federal government. I am unable to concur in this view. It seems to me that the

effect of the adoption of the eighteenth amendment was to extinguish so much of the reserved police power of the several states as enabled them to regulate or prohibit the dealing in intoxicating liquors, and to substitute in lieu thereof the concurrent power conferred by the second section of the amendment upon the several states; that is to say, that the only power which resides in the several states, with relation to this matter, since the adoption of the amendment, is the concurrent power which by the amendment is also vested in the congress, and not an independent power reserved to the states at the formation of the federal union and never since parted with.

But, even if I am wrong in this view, I should still consider the conclusion of the Supreme Court that the enactment of the Van Ness act can be justified as an exercise of the reserved police power of the state untenable. Assuming that the power of the states to deal with the matter of traffic in intoxicating liquors was never wholly parted with, there was, nevertheless, conferred upon each one of them by the amendment an additional power with relation to this subject-matter, viz., the power to *enforce the prohibition* declared therein by appropriate legislation. That it was in the exercise of this additional power, and not in the exercise of a reserved police power, that the legislature passed the Van Ness act is made apparent, I think, by the declaration contained in the first section of the statute that "the short title of this act shall be the 'Prohibition Enforcement act;'" for the only then existing prohibition to be enforced by state legislation was that created by the constitutional amendment.

Concluding that this statute was passed pursuant to the authority conferred upon the state by the provision of the second section of the eighteenth amendment, and that it is in conflict with the Volstead act, in that it declares that within the territorial limits of the state a party guilty of a violation of the first section of the eighteenth amendment shall not be dealt with as a criminal, but merely as a disorderly person, we are, I think, required to determine whether, notwithstand-

ing such conflict, the state law is valid in the respect indicated.

In considering this question, it is to be borne in mind that the eighteenth amendment upon its adoption at once became an integral part of the federal constitution, with the same force and effect as if it had been originally written into it; that the original compact, with the various amendments which from time to time have been engrafted upon it and have become component parts thereof, is a single instrument; and that, in determining the scope and effect to be given to any particular provision of it, the whole instrument is to be examined for the purpose of harmonizing that particular provision with the other provisions contained in it.

The second section of article 6 of the federal constitution as originally adopted declares that "this constitution and the laws of the United States which shall be made in pursuance thereof * * * shall be the supreme law of the land." Reading this provision in connection with and as illumining the provision of the second section of the eighteenth amendment, it seems clear to me that if the Volstead law was enacted in pursuance of authority conferred upon the congress by the constitution (and that it was of course is not controverted), then whenever it appears that a state statute has been enacted which runs counter to any of the provisions of that law, the latter act must be held to be supreme. To hold otherwise is to declare that section 2 of the amendment operates to repeal *pro tanto* by implication the second section of article 6; or, to state it more accurately, perhaps, to amend it so that it now must be read "this constitution and the laws of the United States which shall be made in pursuance thereof [except those made in pursuance of the provision thereof prohibiting the manufacture, sale or transportation of intoxicating liquors, &c.], * * * shall be the supreme law of the land." To take away from the force and scope of article 6, section 2 of the federal constitution, to the extent indicated by judicial construction, if it can be justified at all, is certainly not a function of a state tribunal.

This particular phase of state legislation enacted for the purpose of enforcing national prohibition is one which has not been, so far as I am aware, presented to the United States Supreme Court for its decision. But in the *National Prohibition Cases,* 253 *U. S.* 350, as I understand the reported opinion, one of the questions considered was whether the provision of the Volstead act with relation to the alcoholic content of intoxicating liquors overrode state legislation which was antagonistic thereto, and that court, in the eleventh proposition of the majority opinion, apparently held that the congress having legislated upon that matter, state legislation which attempted to nullify its declaration was invalid. If I am right in my understanding of the decision of the United States Supreme Court upon this point (and the dissenting opinions indicate that I am), it would seem to follow as a necessary sequence that an attempt on the part of a state legislature to nullify any other fundamental provision of the Volstead law would be equally nugatory.

My conclusion in these cases is that for the reason I have pointed out, the Van Ness law is invalid, so far as it attempts to override the act of congress with relation to the character of the offence of which a violator of the constitutional amendment shall be guilty; and this being so, it seems to me inadvisable to pass upon the soundness of the contention that this statute also violates various provisions of our state constitution.

I am authorized to state that Mr. Justice Swayze and Judges Gardner, Ackerson and Van Buskirk concur in the view that I have expressed.

KALISCH, J. My vote for reversal of the judgment of the Supreme Court affirming the conviction of the prosecutor and judgment pronounced on such conviction by the magistrate is based principally upon the ground that the act entitled "An act concerning intoxicating liquor used or to be used for beverage purposes," under which the proceedings were had, is invalid.

1. Prior to the adoption of the eighteenth amendment of the constitution of the United States the traffic in beer, ale, wine and ardent spirits in New Jersey was under the control and regulation of the legislature, by virtue of the police power reserved to the state. When the eighteenth amendment was adopted by the states and became operative throughout the Union, it deprived this state of the exercise of the police power formerly possessed by it. The people of this state surrendered the exercise of the police power to control and regulate the traffic in beer, ale, wine and spirituous liquors to the federal government, as a result of the adoption of the eighteenth amendment by the states.

The state's right, therefore, to legislate in regard to the inhibited traffic is derived not from any reserved police power existing in the state, but solely from the second section of the constitutional amendment which gives "the congress and the several states" "concurrent power to enforce" the amendment "by appropriate legislation."

It is suggested that this section, by granting to the states concurrent power with congress to enforce the amendment by appropriate legislation, inferentially provides a partial restoration to the states of their shorn police power. This is clearly a *non sequitur.* For it is self-evident that the power to enforce the amendment by appropriate legislation is a grant of power solely emanating from the constitutional amendment, and the very act of conferring this power upon the state excludes, perforce, any notion that there is still abiding somewhere in the state's sovereignty a police power regarding the control or regulation of the liquor traffic.

The congress having enacted the Volstead law, that law became the supreme law of the land.

We must assume that it is an appropriate legislative act to enforce the constitutional amendment, in the absence of any federal court decision to the contrary. In fact many of its provisions which were assailed have been declared valid by the federal courts. Among these provisions is one which denounces violations thereof to be crimes, obviously, for the reason that such violations are in effect violations of the con-

stitutional amendment and evince a contemptuous disregard of the organic law of the land.

The present state statute, of later origin than the Volstead act, denounces the doing of any act inhibited by the amendment and declared by the act of congress to be a crime as disorderly conduct and provides for punishment as such. It classes offenders against the organic law of the land under the head of disorderly persons, who under the law of this state are held to be petty offenders. Thus it is observable that there is a sharp conflict raised between the federal and the state statute as to what is appropriate legislation to enforce the constitutional amendment. In such a circumstance it is clear that the state law must yield and give way to the federal act, for the reason that the latter not only expresses the interpretation placed by congress on the term "appropriate legislation" in the constitutional amendment, but by virtue of article 6, section 2 of the constitution of the United States, where it is declared: "This constitution and the laws of the United States which shall be made in pursuance thereof * * * shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding." Bearing this in mind, it seems to me to be wholly immaterial in what order of time the federal and state statutes were enacted and became operative, for the reason that in either event the federal statute becomes the supreme law of the state, and it necessarily follows that a provision in the state statute antagonistic to any provision of the federal act becomes nugatory. Now, since the federal statute has declared in enforcing the constitutional amendment that violations of such amendment are crimes, it does not lie within the power of the state to declare such violations to be otherwise.

It is strenuously urged by counsel of respondents that the state statute is merely in aid of the federal act, and since congress and the states have concurrent power to enact appropriate legislation to enforce the amendment, there is nothing prohibitive in the grant of power to prevent a state to legislate

upon the same subject. I can readily assent to this proposition, provided the state legislation is in consonance with the provisions of the federal law. But it cannot be fairly said that a state statute which makes petty offences of acts denounced by the federal statute as crimes, is a law in harmony with the federal law. We may fairly assume that it was not intended by granting concurrent power with congress to the states to enact appropriate legislation to enforce the constitutional amendment that it was intended to unduly oppress an offender, by subjecting him to be punished twice for the same offence—under the federal statute for the commission of a crime and under the state statute for being a disorderly person. In view of article 5 of the federal constitution, which declares, among other things, "nor shall any person be subject for the same offence to be twice put in jeopardy of life and liberty," it seems to me that it never was intended that a state legislature might, by styling crimes as disorderly acts, petty offences, evade this constitutional provision. While we have no such provision in our state constitution expressed in that way, we, nevertheless, retain the common law doctrine on that subject. *State* v. *Cooper,* 13 *N. J. L.* 361; *State* v. *Mowser,* 92 *Id.* 474.

It is permissible and logical to take the view that in conferring concurrent power upon the states to enact appropriate legislation to enforce the constitutional amendment, it was not intended to bring about a change in article 5, *supra,* of the federal constitution, but rather to confer upon the state the power to legislate so that it may through its courts enforce the constitutional amendment.

I am unwilling to subscribe to any theory that holds that after congress has presumably enacted appropriate legislation to enforce the constitutional amendment, it can be properly said that a state has enacted appropriate legislation in exercising concurrent power, where it has undertaken to incorporate within such legislative enactment provisions which are in conflict with the federal statute.

Mr. Justice Swayze authorizes me to state that he concurs in these views.

I concur in the views expressed by the Chief Justice in his opinion.

WHITE, J. (for affirmance). This appeal challenges the constitutionality of an act of the legislature of New Jersey (known as the Van Ness act) entitled "An act concerning intoxicating liquors used or to be used for beverage purposes," for reasons which I think can be considered under the two following heads, namely: 1. The alleged violation of the provision of the state constitution providing that "the right of a trial by jury shall remain inviolate," and 2. The alleged erroneous interpretation embodied in the enactment of this act, of the "concurrent power to enforce by appropriate legislation" clause of the eighteenth amendment of the federal constitution, by which interpretation the state is assumed to have a real legislative power instead of what may be inelegantly called a mere "rubber stamp" power. The objections to certain other features of the act, and to certain paragraphs claimed not to be within its object as expressed by its title, are, I think, unimportant, because these features and provisions are of a separable and unessential nature and may properly be eliminated under the excision provision of the act, should they, when a case arises involving them, be decided to be offensive for the reasons urged. The objection to the presumption of "for beverage purposes" provision of the act seems to fall within the well-established power of the legislature to prescribe rules of evidence and methods of proof so long as it leaves to the accused a fair opportunity to make his defence and to submit all the facts.

As to the first objection, namely, the one relating to the right of trial by jury, I think the real underlying historically established test depends upon the character of the offence involved rather than upon the penalty imposed. The offence must be a petty and trivial violation of regulations established under the police power of the state in order that the offender may be summarily tried, convicted and punished without indictment by a grand jury and without trial by a petit jury. It must, of course, be assumed that the punishment for such

a petty and trivial offence will also be comparatively petty and trivial, otherwise it would violate another provision of the state constitution which prohibits cruel and unusual punishments. But, assuming that the punishment will bear proper relation to the seriousness of the offence, the theory, as I understand it, which gave rise to the distinction at common law and in subsequent statutes, is that the convenience and benefit to the public resulting from a prompt and inexpensive trial and punishment of violations of petty and trivial police power regulations are more important than the comparatively small prejudice to the individual resulting from his being deprived of the safeguard of indictment before having to answer and of trial by a jury when held to answer. This, of course, is the converse of the rule with regard to serious offences, crimes and misdemeanors, where, for the preservation of the liberties of the people, the security afforded the individual by his right to trial by jury is more important than the mere convenience of the public arising from a speedy and inexpensive summary trial. If the question were an open one I should still be of the opinion that a violation of the prohibition contained in the eighteenth amendment, involving, as it does, conduct, which, prior to the adoption of that amendment, has always been (to quote the language of Chief Justice Beasley in *State* v. *Anderson*, 40 *N. J. L.* 224) "neither immoral nor illegal" throughout the land, was a mere petty and trivial offence against a police power regulation, and that the penalty imposed by the Van Ness act was not so excessive as to offend the constitutional prohibition against cruel and unusual punishments. The question, however, does not seem to me to be an open one either with respect to the character of the offence nor as to the penalty imposed. In *State* v. *Rogers,* 91 *Id.* 212, this court, by unanimous vote only a short time ago (in 1917), upheld a summary conviction under an act punishing by a fine not exceeding $500 and imprisonment not exceeding six months (which is the maximum penalty of both fine and imprisonment provided by the Van Ness act) the driving of an automobile on the public streets by a person while under the influence of intoxicating

liquor. I think the conduct involved in that case, with its menace to the public safety, is no more a petty and trivial offence than would be the prohibition violations which the Van Ness act was designed to prevent or punish, and, as before stated, the penalty is the same. It is suggested that a violation of an amendment to the constitution of the United States cannot in the nature of things be petty and trivial. I think that depends upon the nature of the constitutional amendment involved.

*Second.* Is the Van Ness act unconstitutional because it makes one who violates the federal prohibition amendment a disorderly person instead of making him a criminal, as does the act of congress, commonly known as the Volstead act? The answer to this question depends upon the meaning of the second paragraph of the eighteenth amendment, which provides: "The congress and the several states shall have concurrent power to enforce this article by appropriate legislation." Do the several states, as a result of this paragraph, have any real legislative power or are they confined to the mere copying of the congressional legislation, just exactly as they would have been if the clause in question had been omitted from the amendment? To me the mere stating of the question seems its sufficient answer. Without the reservation the several states would each have had the right to reenact the Volstead act, so that their own courts could exercise jurisdiction of the subject under their own legislation, as was done with reference to the laws against counterfeiting the national currency. It would seem to me to be obvious that the reservation was intended to have some meaning—that is, that it was intended to be a real reservation in favor of the several states. That it does not mean that the states should have power to pass legislation inconsistent with the prohibition itself is quite obvious, because the language of the reservation expressly limits it to legislation to *enforce* the prohibition. Thus it was decided by the Supreme Court of the United States in the *National Prohibition Cases*, 253 *U. S.* 350, that the several states had no power by legislation to establish a different meaning for the term "intoxicating

liquors" than that prescribed by the act of congress on the subject. There was no reservation in favor of the states as to the nature of the prohibition; there was only a reservation in their favor as to its enforcement. Congress, on the other hand, has such power quite apart from this enforcement section, in its general authority, under paragraph 18, section 8, article 1 of the federal constitution, "to make all laws which shall be necessary and proper to carry into execution the foregoing powers and all other powers vested by this constitution in the government of the United States."

In this connection it seems to me that the real nature of the whole subject covered by this prohibition should not be lost sight of. It is essentially the exercise of the sovereign police power whereby, as an attribute of sovereignty, the government of the people has the power and is in duty bound to make such regulations as it thinks necessary or desirable for the public health, the public morals and the public safety. This police power, so far as the prohibition contained in the eighteenth amendment is concerned, was, prior to the adoption of that amendment, vested exclusively in the several sovereign states. The federal government, being limited in its authority to the powers expressly conferred upon it by the people and by the states in the federal constitution and its amendments, and to those powers properly incident thereto, has no sovereign police power except as so conferred. The eighteenth amendment was a transfer by the people and by the states of the sovereign police power on the subject of the prohibition thereby enacted from the states to the federal government, but there was expressly reserved, as it seems to me, to remain in the states, an important part of their former police power, namely, the part which enabled the states to enforce the prohibition in their own way within their own borders for the protection of the health, the morals and the safety of their own citizens. That this was a reservation of power to themselves by the states, and not a bestowal of power upon the states by the federal government, is a necessary construction, it seems to me, because of the very nature of our federal and state governments system. The federal

government has no power to grant powers to the state government. It has only such powers as are taken from the states and given to it. This, I understand, accords with the view expressed by Mr. Justice Minturn in the opinion filed by him . for the Supreme Court in this case.

The reservation was not exclusive, however, because congress was also expressly given the same power of enforcement. Congress would have had such a power under the federal constitution without section 2 of the eighteenth amendment, but in the absence of that section, the power of congress to enact such legislation would have been exclusive, and, as before pointed out, the several states could only have enacted "like" legislation. To me the reason for the insertion of a real power in the several states to legislate for the prohibition enforcement seems obvious. The prohibition itself was by the adoption of the amendment and by force of another provision of the federal constitution to become "the supreme law of the land." Standing by itself, its enforcement would depend upon the legislation enacted by congress if congress should enact such legislation. The prohibition was of vital interest, however, to the welfare of the inhabitants of the several states. Their public health, their public morals and their public safety were, to a large extent, to be affected by the legislation which should be adopted to enforce this prohibition. What was more appropriate than that the states, in becoming a party to this transfer of a great slice of their police power to the federal government, should insist upon a reservation to themselves of the right to see also that the prohibition was adequately enforced within their respective limits? What a farce, for instance, it would have been if the act of congress to enforce the prohibition had merely provided a trivial fine for violations. The situation would, if such a thing were possible, have been even worse than it was during the first year after the amendment went into effect, when, seemingly because of its intentional maladministration, almost its only serious result was to enrich dishonest federal enforcement officers and professional criminals in general, and thereby to create and foster in the public mind a serious contempt for

the administration of the law.   Upon the various states step-
ping in, however, to put an end to this scandal, and passing
what to each one seemed appropriate legislation for enforce-
ment, whereby, particularly in some instances, as in the case
of the Van Ness act, a prompt and inexpensive means of en-
forcing the prohibition was devised, the whole thing took on
a different aspect, and enforcement began to be real all along
the line.   The ponderous, and often dilatory, grand jury in-
dictment and petit jury trial scheme of the Federal Enforce-
ment act, and of the acts passed by some of the states, however,
even when thus awakened up to serious administration, while
quite fitting and proper for the large commercial violations
of the prohibition, was neither suited nor adequate to reach
the petty and trivial offenders for which the prompt and
speedy methods of the Van Ness act are so appropriate.   To
me it seems that the act in question entirely conforms to the
purpose of the concurrent reservation and is not in any way
offensive because its enactments are not mere copies of those
of the Volstead act.

Of course, the Van Ness act cannot, nor does it pretend to,
prevent the trial, conviction and sentence in the United
States courts under the Volstead act of prohibition offenders
in New Jersey according to the provisions of that act.   To
give the state legislature such a power would be to make its
action exclusive, which under the "concurrent power" clause,
of course, it is not, any more as I maintain than is the power
of congress under the same language.   But it is said that
while it is true that the Van Ness act has no legal power to
abrogate in New Jersey the "crime" feature of the Volstead
act, yet, if upheld, it will in fact do so, under the twice in
jeopardy prohibitions of both the state and federal constitu-
tions and of the common law, by rendering a person, either
acquitted or convicted as a disorderly person under the Van
Ness act, immune from subsequent indictment, trial and con-
viction under the Volstead act for the same actual offence.
The difficulty with this contention is that an acquittal or con-
viction under the Van Ness act would seem, under the de-
cisions, not to have this effect.   The cases hold that where the

same offence violates the criminal statutes of two states, or
of one state and of the United States, or a "disorderly" ordi-
nance of a municipality and a criminal statute of the state,
convictions may be had and maintained under both, on the
theory that the violation of each is a separate offence in itself.
*Moore* v. *People of Illinois,* 14 *How.* 13; *Howe* v. *Plainfield,*
37 *N. J. L.* 145; *State* v. *Gratz,* 86 *Id.* 483, and 12 *Cyc.* 259,
288, and numerous cases there cited.

This disposes also, it seems to me, of the further contention
that the Van Ness act violates article 1, section 9 of the state
constitution, which provides that "no person shall be held
to answer for a criminal offence, unless on the presentment or
indictment of a grand jury." It is urged that as the Volstead
act, which makes the offence in question a crime, is, under
the federal constitution, "the supreme law of the land," the
proceeding under the Van Ness act is in fact an attempt to
hold to answer for a criminal offence without such an indict-
ment. Of course, if the violation of the Van Ness act is one
offence and the violation of the Volstead act, although by the
same actual transaction is a separate offence, it is obvious that
the holding to answer for the one offence, which is consti-
tuted a "disorderly act," is not the holding to answer for the
other offence which is a "crime."

It is urged, however, that the offence here involved is "by
necessary implication" the violation of the eighteenth amend-
ment and not the violation of the Volstead act or of the Van
Ness act. The difficulty with this contention is that the
eighteenth amendment itself and standing alone does not
make the doing of the prohibited act an offence of any kind.
Such prohibited act is not thereby constituted a crime, a
misdemeanor nor a disorderly act. It is simply "prohibited."
If there were no legislation, either federal or state, one who
by a single act (not habitually repeated so as to become
a common law offence) disobeyed the eighteenth amend-
ment, would not commit a legal offence of any kind for
which he could be punished. It is clearly the offence against
the legislation making the prohibited act a crime (in the case
of the Volstead act) or a disorderly act (in the case of the

Van Ness act), which are the legal offences involved, and, as before pointed out, these are, under the decisions, separate and distinct offences.

I am authorized to say that Mr. Justices Parker and Black substantially concur in the views herein expressed.

At the request of the judges the following questions are ordered to be voted upon separately:

*First.* Does the act entitled "An act concerning intoxicating liquors used or to be used for beverage purposes," passed March 29th, 1921, the short title of which is "Prohibition Enforcement act," commonly called the Van Ness act, which makes any person who violates any of its provisions a "disorderly person" triable by a magistrate without a jury, and on conviction liable to sentence of confinement in the workhouse, penitentiary or common jail, for a period not to exceed six months or to pay a fine not to exceed $500, or both, violate article 1, section 7 of the constitution of New Jersey, which provides *inter alia* that the right of trial by jury shall remain inviolate; and also *Ib.*, section 9, which provides *inter alia* that no person shall be held to answer for a criminal offence unless upon the presentment or indictment of a grand jury?

*Yes*—THE CHANCELLOR, SWAYZE, KALISCH, ACKERSON, VAN BUSKIRK, JJ.   5.

*No*—THE CHIEF JUSTICE, PARKER, BLACK, KATZENBACH, WHITE, WILLIAMS, JJ.   6.

*Second.* Does the provision of the Van Ness act, which declares by necessary implication that violations of the eighteenth amendment to the federal constitution shall be deemed to be disorderly acts as distinguished from those which are criminal in their nature, render it invalid to that extent, by reason of the fact that prior to its enactment the congress of the United States, in pursuance of the provision of the second section of that amendment giving to the congress and the several states concurrent power to enforce it by appropriate legislation, had already declared by necessary

implication in and by the federal statute, commonly known as the Volstead act, that a person who violated any provision of the amendment should be deemed guilty of a crime?

*Yes*—THE CHIEF JUSTICE, SWAYZE, KALISCH, GARDNER, ACKERSON, VAN BUSKIRK, JJ.    6.

*No*—THE CHANCELLOR, PARKER, BLACK, KATZENBACH, WHITE, WILLIAMS, JJ.    6.

*Third.* Does the Van Ness act violate article 4, section 7, paragraph 4 of the constitution of New Jersey, which provides that every law shall embrace but one object, and that shall be expressed in the title?

*Yes*—THE CHANCELLOR, KALISCH, JJ.    2.

*No*—THE CHIEF JUSTICE, SWAYZE, PARKER, BLACK, KATZENBACH, WHITE, WILLIAMS, ACKERSON, VAN BUSKIRK, JJ.    9.

*Fourth.* Do the provisions of the Van Ness act making the judges of the courts of Common Pleas, and, in certain circumstances, the justices of the Supreme Court, magistrates, and requiring them to enforce the act in given proceedings, impose upon them duties which do not inhere in, or appertain to, their judicial office, and are such provisions therefore void?

*Yes*—KALISCH, KATZENBACH, JJ.    2.

*No*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, PARKER, BLACK, WHITE, WILLIAMS, ACKERSON, VAN BUSKIRK, JJ.    9.

*Fifth.* Shall the judgments under review be reversed?

*Yes*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, KALISCH, KATZENBACH, GARDNER, ACKERSON, VAN BUSKIRK, JJ.    8.

*No*—PARKER, BLACK, WHITE, WILLIAMS, JJ.    4.