**UNITED STATES of America**

v.

**Ben Berkley WOODS, Jr.**

**Crim. No. W–78–040.**

United States District Court,
D. Maryland.

May 10, 1978.

Russell T. Baker, Jr., U. S. Atty. for the Dist. of Md., Catherine C. Blake, Asst. U. S. Atty., Baltimore, Md., for plaintiff.

Howard J. Schulman, Baltimore, Md., for defendant.

WATKINS, Senior District Judge.

■ By an information filed on January 31, 1978 by the United States Attorney for the District of Maryland, defendant Ben Berkley Woods was charged with operating a motor vehicle while under the influence of intoxicating liquor [hereafter driving while intoxicated] on national park land within the special territorial jurisdiction of the United States, as defined in 18 U.S.C. § 7, and in contravention of 36 C.F.R. § 50.28(c). Section 50.28(c) provides:

> *Driving motor vehicle while intoxicated.* No person who is under the influence of intoxicating liquor . . . shall operate or drive a motor vehicle of any kind in any area covered by this part.

If convicted of a violation of this regulation, the defendant may be "punished by a fine of not more than $500 or imprisonment for not exceeding six months or both." 36 C.F.R. § 50.5(a). By his court-appointed attorney, Woods entered a Prayer for Jury Trial, Paper # 7, accompanied by a Memorandum in Support.[1] The United States Attorney resisted this request by filing a Memorandum in Opposition to Defendant's Prayer for Jury Trial, Paper # 9.

---

1. Scattered throughout his Memorandum in Support are expressions of the defendant's dissatisfaction with the events that transpired prior to the filing of the information in this case. The primary focus of his concern seems to be the fact that he was charged before the magistrate with violations of Maryland law, under which he would definitely have been entitled to a jury trial, *see* note 10 and accompanying text *infra*, whereas the present information charges a federal offense, under which his right to a jury trial is an open question. The defendant weaves a nebulous argument that this change either violates concepts of "fundamental fairness" or constitutes "selective incorporation" of Maryland law in violation of the intent of 18

■ Because the penalty for the offense of driving while intoxicated does not exceed imprisonment for a period of six months, a fine of $500, or both, it falls within the definition of a "petty" offense as set forth in 18 U.S.C. § 1(3). In *United States v. Morrison*, 425 F.Supp. 1235 (D.Md. 1977), Judge Kaufman analyzed the various provisions applicable to the trial of petty offenses in the federal judicial system and found that they "combine negatively to indicate strongly that as to 'petty offenses' the defendant is not given the right to a jury trial." *Id.* at 1238; *see Comments by the Supreme Court upon its Promulgation of the Rules of Procedure for the Trial of Minor Offenses before United States Mag-*

istrates, 400 U.S. 1029, 1031–33 (1971) (Black, J., dissenting). More specifically, Judge Kaufman concluded that the Magistrates Rules

> reveal a specific intent to reject any . . . nonconstitutional entitlement. In the face of that intent it would be inappropriate for this Court to exercise its discretion, assuming *arguendo* only that this Court possesses the same, to grant the defendant's jury trial demand.

425 F.Supp. at 1239. ·This Court agrees, for the reasons set forth in *Morrison*, that trial by jury is unavailable to a defendant charged with a petty offense, unless in a specific context a constitutional right to such a trial is found to exist.[2]  *Accord,*

U.S.C. § 13. In support of the latter proposition, the defendant cites *United States v. Robinson*, 495 F.2d 30, 33 (4 Cir. 1974), where it was held that the Assimilative Crimes Act of 1948, 18 U.S.C. § 13, was "[d]esigned to assimilate the entire state criminal law into any appropriate federal enclave and does not contemplate selective incorporation."

Defendant's reliance on *Robinson* is misplaced. The authority for 36 C.F.R. § 50.28(c) is 16 U.S.C. § 3, not 18 U.S.C. § 13. The latter law is applicable only to those geographical locations specified in 18 U.S.C. § 7. National parks are conspicuously absent from 18 U.S.C. § 7, but are included under 16 U.S.C. § 3 which provides in part:

> The Secretary of the Interior shall make and publish such rules and regulations as he may deem necessary or proper for the use and management of the parks . . . under the jurisdiction of the National Park Service . . . .

The federal regulations promulgated pursuant to 16 U.S.C. § 3 specifically provide for selective incorporation. Section 50.29(a) of 36 C.F.R. states in part:

> *District of Columbia, Maryland and Virginia laws and regulations.* The laws and regulations relating to traffic control promulgated for the District of Columbia and the laws of Maryland and Virginia, respectively, as adopted by the act of June 25, 1948 (62 Stat. 686; Title 18 U.S.C. sec. 13), shall constitute the traffic and motor vehicle regulations enforceable under the act of March 17, 1948 (62 Stat. 81), in all areas covered by this part within their respective geographical limits *unless otherwise provided for by act of Congress or the regulations contained in this part* . . . .

(Emphasis added.) Because there is a federal regulation prohibiting driving while intoxicat-

ed, viz., 36 C.F.R. § 50.28(c), the Government would have been in error to persist in charging the defendant under Maryland law.

Furthermore, when this prosecution was transferred, at defendant's demand, from the magistrate to the United States District Court for trial before a United States District Judge, it became subject to the provisions of the Federal Rules of Criminal Procedure, which provide for the initiation of a prosecution only by indictment or information. F.R.Cr.P 7(a). Of the three charges originally lodged against the defendant by the arresting officer, the United States Attorney decided to press only one; Woods can hardly complain of this reduction, which is completely permissible.

2. The Government has vigorously argued that a holding by this Court granting the defendant a constitutional right to trial by jury for the offense of driving while intoxicated necessarily implies that the Magistrates Rules are unconstitutional in two respects. The first of these two arguments springs from Justice Black's comments upon the promulgation of the Rules, 400 U.S. at 1031–33, and may be synopsized as follows: The "language of the current Rules 2 and 3 'by strong negative pregnant' indicates that there is no right to jury trial for petty offenses in the federal system." Government's Supplemental Memorandum, Paper # 18, at 5. Petty offenses, as that term is used in the Rules, are defined by 18 U.S.C. § 1(3) and the offense involved here falls within that definition. Thus, the Magistrates Rules would deny the defendant a trial by jury and must be unconstitutional if this Court finds a constitutional entitlement to a jury trial for this offense.

The Court cannot accept this proposition. The issue presented here is whether driving while intoxicated is a "serious" offense, so that it *must* be included within the meaning of the

*United States v. Merrick*, 459 F.2d 644, 645 & n.6 (4 Cir. 1972).

Therefore, the question presented for decision by this Court is: Does a defendant charged with driving while intoxicated in contravention of 36 C.F.R. § 50.28(c), with exposure to the possibility of six months incarceration, a $500 fine, or both, have a right to a trial by jury under the provisions of the United States Constitution?

Article III, § 2, cl. 3, of the United States Constitution guarantees that "[t]he Trial of all Crimes, except in Cases of Impeachment, shall be by Jury  .  .  .." The sixth amendment to the Constitution provides in part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed  .  .  .."

The rationale underlying the inclusion of these provisions in the Constitution was eloquently stated by the Supreme Court in *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968):

> The guarantees of jury trial in the Federal and State Constitutions reflect a profound judgment about the way in which law should be enforced and justice administered. A right to jury trial is granted to criminal defendants in order to pre-

word "crime" in article III, section 2 of the United States Constitution. *See* text preceding note 4 *infra*. In deciding this question, the Court must look to the decisions of the Supreme Court of the United States for its definition of the constitutional term "crime." The Supreme Court is the ultimate interpreter of the Constitution. *See, e. g., United States v. Nixon*, 418 U.S. 683, 702–05, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *Marbury v. Madison*, 1 Cranch 137, 2 L.Ed. 60 (1830). Certainly, the Magistrates Rules and the congressional statute, 18 U.S.C. § 1(3), are relevant factors in deciding the seriousness of the offense, but their major significance in this case is that they force a resolution of the constitutional issue by providing no statutory right to a jury trial for the offense.

The Government's second argument focuses on one of the primary purposes of the Magistrates Rules, to ensure "that no defendant consents to be tried before a Magistrate without fully understanding and knowingly waiving any right to jury trial he may have." Government's Supplemental Memorandum, at 8. The Rules detail what a magistrate must explain to a defendant and, viewing Rule 3(b) and 18 U.S.C. § 1(3) together, a magistrate would not ordinarily inform a person accused of driving while intoxicated of any right to a trial by jury. Thus, if such a defendant were to sign the usual waiver of his right to be tried before a district judge, he would unknowingly be giving up any right which he might have to trial by jury for that offense. Certainly, this would not constitute a valid waiver.

Again, the confusion that creates the background for this argument stems from mixing statutory rights with constitutional rights. If a defendant before a magistrate has a right to a jury trial, whether constitutional or statutory in origin, he cannot waive that right unless he does so knowingly and voluntarily. The right to a knowing and voluntary waiver is both statutory and constitutional in origin. In detailing exactly what must be explained to a defendant so as to permit his trial before a magistrate, the Rules attempt to ensure that the defendant will be accorded both his constitutional and statutory rights. Nevertheless, no constitutional provision mandates the promulgation of the detailed instructions contained in the Magistrates Rules. With or without their promulgation, a defendant could not lawfully be tried before a magistrate absent a knowing and voluntary waiver on his part of any rights which he would thus be giving up.

Therefore, while the magistrates have a statutory duty to explain to a defendant certain specified consequences of his decision not to be tried by a district judge, they also have a separate duty to explain the constitutional ramifications of that choice. Certainly, the detailed instructions set forth in the Magistrates Rules ease the performance of their duty and are probably in many instances exclusively relied upon by a magistrate in determining what a defendant must be told. But, following those instructions fulfills for certain only the statutory duty of the magistrate. Although adherence to the Rules will also usually fulfill the magistrate's constitutional duty, there may be situations where a constitutional right exists which is not addressed by the Rules. In such a case, the magistrate has an additional constitutional duty to inform the defendant of that right.

In sum, the Court recognizes that a magistrate confronted with one accused of a violation of 36 C.F.R. § 50.28(c) is not compelled under the Rules to inform the defendant that in deciding upon trial before the magistrate, he may be waiving his right to a jury trial. If the defendant then elects to forego his right to trial before the district judge, his waiver would be subject to constitutional attack. This possibility, however, does not imply that the Magistrates Rules are unconstitutional; it means only that the magistrate has not fulfilled his constitutional duty to the defendant as it exists with reference to that particular offense.

vent oppression by the Government. . . . The framers of the constitutions strove to create an independent judiciary but insisted upon further protection against arbitrary action. Providing an accused with the right to be tried by a jury of his peers gave him an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge. If the defendant preferred the common-sense judgment of a jury to the more tutored but perhaps less sympathetic reaction of the single judge, he was to have it. Beyond this, the jury trial provisions in the Federal and State Constitutions reflect a fundamental . . . reluctance to entrust plenary powers over the life and liberty of the citizen to one judge or to a group of judges. Fear of unchecked power . . . found expression in the criminal law in this insistence upon community participation in the determination of guilt or innocence.

*Id.* at 155–56, 88 S.Ct. at 1451 (footnote omitted). Based on this understanding that the right to a jury trial is the fulfillment of a basic purpose in the establishment of this nation, the Court concluded that "in the federal judicial system, a general grant of jury trial for *serious* offenses·is a *fundamental* right, essential for preventing miscarriages of justice and for assuring that fair trials are provided for all defendants." *Id.* at 157–58, 88 S.Ct. at 1452 (emphasis added). Nevertheless, since 1888,[3] the Supreme Court has adhered to the principle that "there is a class of *petty* or minor offenses . . . which . . . may . . . be tried by the court and without a jury . . . ." *Callan v. Wilson,* 127 U.S. 540, 555, 8 S.Ct. 1301, 1306, 32 L.Ed.2d

223 (1888) (emphasis added), *recently reaff'd in Ludwig v. Massachusetts,* 427 U.S. 618, 624–25, 96 S.Ct. 2781, 49 L.Ed.2d 732 (1976). Accordingly, the crux of the question presented is whether for constitutional purposes the act of driving while intoxicated is a "petty" offense or a "serious" crime. Inasmuch as the Supreme Court has never precisely defined the difference between these two levels, *Merrick, supra,* 459 F.2d at 645, this Court must carefully analyze the opinions of the Supreme Court which have addressed the issue in order to identify the relevant factors for consideration.[4]

In *Baldwin v. New York,* 399 U.S. 66, 69, 90 S.Ct. 1886, 1888, 26 L.Ed.2d 437 (1970), Justice White, writing for the Court, held that "no offense can be deemed 'petty' for purposes of the right to trial by jury where imprisonment for more than six months is authorized." In so concluding, Justice White synopsized the history of this recurring issue:

In deciding whether an offense is "petty" we have sought objective criteria reflecting the seriousness with which society regards the offense . . . and we have found the most relevant such criteria in the severity of the maximum authorized penalty. . . . Applying these guidelines, we have held that a possible six-month penalty is short enough to permit classification of the offense as "petty."

*Id.* at 68–69, 90 S.Ct. at 1888 (citations omitted). In a footnote, the Court expanded on this theme:

Decisions of this Court have looked to both the nature of the offense itself, *District of Columbia v. Colts,* 282 U.S. 63, [51

**3.** *See Cheff v. Schnackenberg,* 384 U.S. 373, 387, 86 S.Ct. 1523, 1528, 16 L.Ed.2d 629 (1966), where Justice Douglas, in dissent, wrote: "The notion that the trial of a petty offense could be conducted without a jury was first expounded by this Court in·*Callan* . . . ."

**4.** Preliminarily, this Court would observe that because of the fundamental nature of the right to trial by jury and because of the plain language of the constitutional provisions declaring that right, a strong argument can be made that the burden is upon the Government to show that a defendant in a criminal action who has

sought a jury trial may constitutionally be denied his request. *See United States v. Bishop,* 261 F.Supp. 969, 975–76 (N.D.Cal.1966), *relied upon in Morrison, supra,* 425 F.Supp. at 1238, and *cited with apparent approval in Merrick, supra,* 459 F.2d at 645. In *Bishop,* Judge Sweigert reviewed the pertinent Supreme Court decisions and concluded that "Implicit [in them] is the requirement that a defendant is entitled to a trial by jury in *all* cases except as otherwise provided by Congress and then only to the extent permitted by the Constitution." 261 F.Supp. at 975 (emphasis in original).

S.Ct. 52, 75 L.Ed. 177] (1930), as well as the maximum potential sentence, [*Duncan, supra*], in determining whether a particular offense was so serious as to require a jury trial. In this case, we decide only that a potential sentence in excess of six months imprisonment is sufficiently clear by itself to take the offense out of the category of "petty." *Id.* at 69 n.6, 90 S.Ct. at 1888.

■■■ These pronouncements demonstrate that the severity of the permissible punishment for an offense, if such punishment does not exceed six months imprisonment, cannot be the sole determinative factor. In *Merrick, supra,* the Fourth Circuit recognized that some crimes may be deemed "so serious as to entitle [a defendant] to a jury regardless of the penalty." 459 F.2d at 645 n.4, *citing Colts, supra,* 282 U.S. at 73, 51 S.Ct. 52. It is also clear that Congress' decision to define a petty offense merely by reference to its possible penalties, 18 U.S.C. § 1(3), "does not necessarily mean that one is not constitutionally entitled to a trial by jury." *Bishop, supra,* 261 F.Supp. at 971, *citing inter alia Colts, supra; see also Rothweiler v. Superior Court,* 100 Ariz. 37, 410 P.2d 479, 16 A.L.R.3d 1362, 1368 (1966) (en banc). Therefore, although *both* the lesser severity of the penalty *and* Congress' declaration that by virtue of such lesser severity it is merely a petty offense are relevant, other criteria must be sought and evaluated by the Court.

The Government has not disputed the theory that where the penalty is less than six months imprisonment, a comprehensive analysis of the "nature" of the offense is required to determine whether it is a "serious" crime, requiring trial by jury, or a "petty" offense, unaccompanied by that privilege. Indeed, it has not been argued that the lesser severity of the offense alone is enough to justify the denial of a constitutional right to a jury trial. Nevertheless, the Government has directed the Court's attention to the Supreme Court's opinion in *Codispoti v. Pennsylvania,* 418 U.S. 506, 512, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974), where the defendant protested the summary adjudication of his guilt on a charge of criminal contempt. The *Codispoti* case is one of several in which the Court struggled with an anomaly created by its prior decisions in this area, to wit: The most relevant criterion in deciding whether a right to trial by jury must be accorded to one accused of any given offense is the severity of the maximum penalty authorized by the legislature for imposition upon conviction. However, the nature of the offense of criminal contempt is not so serious as to entitle a defendant to a jury regardless of the severity of the punishment and, traditionally, no statutory penalty has been prescribed for the offense. Hence, the only relevant factor in such prosecutions is the length of the sentence actually imposed, and whether a defendant must be accorded a right to trial by jury for such a charge cannot be determined until guilt has been adjudged and sentence pronounced. *See, e. g., Taylor v. Hayes,* 418 U.S. 488, 495–96, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974); *Frank v. United States,* 395 U.S. 147, 148–50, 89 S.Ct. 1503, 23 L.Ed.2d 162 (1969); *Dyke v. Taylor Implement Mfg. Co.,* 391 U.S. 216, 219–20, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968); *Bloom v. Illinois,* 391 U.S. 194, 195–200, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968); *Cheff v. Schnackenberg,* 384 U.S. 373, 378–80, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966); *United States v. Barnett,* 376 U.S. 681, 692–99 & n.12, 84 S.Ct. 984, 12 L.Ed.2d 23 (1966).[5]

**5.** In *Barnett,* the Court questioned for the first time whether, in cases where a lengthy term of imprisonment was imposed for the contempt conviction, there might be cause to modify the long standing rule that a charge of criminal contempt may constitutionally be tried in a summary fashion under any circumstances. 376 U.S. at 694 n.12, 84 S.Ct. 984. In fact, that rule was gradually modified by the decisions cited in the text, as the Court found the following with regard to prosecutions for criminal contempt:

(1) "[W]here no maximum penalty is authorized, the severity of the penalty actually imposed is the best indication of the seriousness of the particular offense. *See, e. g., Cheff v. Schnackenberg, supra.*" *Frank, supra,* 395 U.S. at 149–50, 89 S.Ct. at 503;

(2) Without the imposition of a sentence exceeding six months imprisonment, "the nature of criminal contempt, an offense *sui generis,* does not warrant treatment" other than as a "petty" offense. *Cheff, supra,* 384 U.S. at 380, 86 S.Ct. 1523, *citing Colts, supra,* in

In *Codispoti,* the Court held that where a single adjudication of multiple acts of contempt results in the imposition of separate sentences together aggregating more than six months, a trial by jury is required even though no sentence for more than six months was imposed for any one act of contempt. 418 U.S. at 511–13 and 517, 94 S.Ct. 2687. In reviewing the Court's previous decisions, Justice White, writing for the majority, first mentioned *Duncan, supra,* and then briefly synopsized the decision in *Bloom, supra,* characterizing it as a "companion case" to *Duncan.* In *Bloom,* Justice White wrote, the Court recognized that "where no legislative penalty is specified . . . ., the pettiness or seriousness of the contempt will be judged by the penalty actually imposed." *Codispoti, supra,* 418 U.S. at 511, 94 S.Ct. at 2691. Furthermore, he continued, in *Bloom,* "the Court recognized that sentences up to six months could be imposed for criminal contempt without . . . a jury, but a conviction for criminal contempt in a nonjury trial could not be sustained where the penalty imposed was 24 months in prison." 418 U.S. at 511–12, 94 S.Ct. at 2691.

The very next sentence in *Codispoti* states:

> Since that time, our decisions have established a fixed dividing line between petty offenses and serious offenses: Those crimes carrying a sentence of more than six months are serious crimes and those carrying a sentence of six months or less are petty crimes. *Frank v. United States,* 395 U.S. 147, 149–50 [89 S.Ct. 1503, 23 L.Ed.2d 162] (1969); *Baldwin v. New York,* 399 U.S. 66, 69 [90 S.Ct. 1886, 26 L.Ed.2d 437] (1970).[4]

*Id.* at 512, 94 S.Ct. at 2691 (footnote in original). With regard to offenses for which six months incarceration or less is authorized, if taken out of context and at face value, this quote would cast considerable doubt on this Court's previous determination that the nature of the particular crime is controlling as to whether a defendant has a constitutional right to a jury trial, with the length of the possible sentence being only a single factor. Nevertheless, it is clear that Justice White was not purporting to enunciate a new fixed standard for the definition of "petty" offenses. Indeed, the entire statement is correct *as applied to the offense of criminal contempt,* because the Court had previously held that offense "not a crime of the sort that requires the right to jury trial regardless of the penalty involved." *Bloom, supra,* 391 U.S. at 211, 88 S.Ct. at 1487. Moreover, in the companion case to *Codispoti,* Justice White quoted this very language from *Bloom,* after saying: "We remain firmly committed to the proposition . . . ." *Taylor, supra,* 418 U.S. at 496, 94 S.Ct. at 2702. Justice White's reference to *Bloom* in *Taylor* demonstrates that he was well aware of the Court's longstanding rule that the trial of certain offenses may require a jury without regard to the possible length of imprisonment.

Additionally, insofar as the statement may seem to articulate a rigid definition of "petty" offenses, the language of the Court in *Baldwin,* one of the cases cited in support by Justice White, is flatly to the contrary. In footnote 4 of the *Codispoti* opinion, Justice White recognized that the decision in *Baldwin* applied only to "criminal prosecutions where the term of imprisonment authorized by statute exceeds six months." *Codispoti, supra,* 418 U.S. at 512 n.4, 94 S.Ct. at 2691. In fact, in the footnote quoted earlier from *Baldwin,* 399 U.S. at 69 n.6, 90 S.Ct. 1886, *see* page 1339 *supra,* the Court specifically so limited its holding therein, after having acknowledged that a

comparison; *Dyke, supra,* 391 U.S. at 219–20, 88 S.Ct. 1472;

(3) The rule from *Baldwin, supra,* 399 U.S. at 69, 90 S.Ct. 1886, that imprisonment for longer than six months upon conviction of an offense necessarily raises that offense to the level of a "serious" crime, must be applied. *Bloom, supra,* 391 U.S. at 210–11, 88 S.Ct. 1477;

(4) The imposition of a lengthy term of probation alone is not enough to make the offense a "serious" crime. *Frank, supra,* 395 U.S. at 151–52, 89 S.Ct. 1503; and

(5) The prosecuting authority may lawfully reduce a sentence, after conviction, to six months or less rather than to retry the contempt charge with a jury. *Taylor, supra,* 418 U.S. at 496, 94 S.Ct. 2697.

different analysis is required as to those offenses for which punishment of lesser severity than six months imprisonment is authorized. Because Justice White authored the majority opinions in *Taylor* and *Baldwin,* recognizing in both that no fixed standard existed for such offenses, this Court cannot assume that in *Codispoti* he intended, without discussion, to abrogate such a settled rule.[6] Therefore, this Court concludes that the ambiguous statement in *Codispoti* must be limited to application in prosecutions for criminal contempt.

In earlier Supreme Court cases, one of the major avenues of inquiry as to whether a right to trial by jury existed for a specific offense was the treatment which was accorded to persons accused of that offense at common law. *See, e. g., District of Columbia v. Clawans,* 300 U.S. 617, 624–25, 57 S.Ct. 660, 81 L.Ed. 843 (1937); *Callan, supra,* 127 U.S. at 549, 8 S.Ct. 1301. Nevertheless, that inquiry alone has never been held by the Court to be sufficient to justify the grant or denial of that right.

In *Callan,* the Court wrote that the provision of the third article of the Constitution "is to be interpreted in the light of the *principles* which, at common law, determined whether the accused, in a given class of cases, was entitled to be tried by a jury." 127 U.S. at 549, 8 S.Ct. at 1303 (emphasis added). After having decided that the crime at issue was such that at common law the accused would have had a right to a jury trial, the Court added that it "is an offense of a grave character, affecting the public at large . . . ." *Id.* at 556, 8 S.Ct. at 1307. Almost forty years later in *Clawans,* although the Court found that the specific offense "was not indictable at com-

mon law," again its analysis did not end, as it was next noted: "Today [the offense] is at most but an infringement of local police regulations, and its moral quality is relatively inoffensive." 300 U.S. at 625, 57 S.Ct. at 662. Even after having made these observations, the Court discussed at great length whether the severity of the penalty was such as to require a jury trial when viewed in light of "the laws and practices of the community taken as a gauge of its social and ethical judgments." *Id.* at 628, 57 S.Ct. at 663. The focus of the latter discussion was "whether a statutory offense, in other respects trivial and not a crime at common law, must be deemed so serious as to be comparable with common law crimes, and thus to entitle the accused to the benefit of a jury trial prescribed by the Constitution." *Id.* at 625, 57 S.Ct. at 662.

■ Thus, the status of a specific offense at common law is not solely determinative of an accused's right to a jury trial. Rather, the Court must look to the "principles" of the common law to determine if a particular offense is one which would fall into the class of cases properly labeled "petty," or is one which must be regarded as "so serious" that it is "comparable to a common law crime." The most succinct statement of those principles is found in Frankfurter & Corcoran, *Petty Federal Offenses and the Constitutional Guarantee of Trial by Jury,*[7] 39 Harv.L.Rev. 917 (1926) (hereafter *Frankfurter*), where it was written with reference to the common law:

> Broadly speaking, acts were dealt with summarily which did not offend too deeply the moral purposes of the community,

---

**6.** Quite recently, the Court seemed to acknowledge the continuing validity of this special approach to offenses accompanied by a possible penalty not exceeding six months in confinement:

> Only when an accused is charged with a "petty" offense, *usually* defined by reference to the maximum punishment that might be imposed, does the Constitution permit the Federal Government and the State to deprive him of his liberty without affording him an opportunity to have his guilt determined by a jury.

*Ludwig v. Massachusetts,* 427 U.S. 618, 624, 96 S.Ct. 2781, 2785, 49 L.Ed.2d 732 (1976) (emphasis added), *citing Baldwin, supra,* as direct support.

**7.** This article has often been cited by the Supreme Court with obvious approval. *See, e. g., Baldwin v. New York,* 399 U.S. 66, 68 n.5, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970); *Duncan v. Louisiana,* 391 U.S. 145, 159 n.31, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); *District of Columbia v. Clawans,* 300 U.S. 617, 624 n.1, 57 S.Ct. 660, 81 L.Ed. 843 (1937).

which were not too close to society's danger and were stigmatized by punishment relatively light.

*Id.* at 980–81.[8]

The Supreme Court decision in *District of Columbia v. Colts,* 282 U.S. 63, 51 S.Ct. 52, 75 L.Ed. 177 (1930), supports the preceding analysis and also provides guidance for the correct application of the principles set forth in *Frankfurter.* In *Colts,* the Court stated:

> Whether a given offense is to be classed as a crime, so as to require a jury trial, or as a petty offense, triable summarily without a jury, depends primarily upon the nature of the offense. The offense here charged is not merely *malum prohibitum,* but in its very nature is *malum in se.* It was an indictable offense at common law. The New Jersey Court of Errors and Appeals, in *State v. Rodgers,* [91 N.J.L. 212, 214, 102 A. 433, 435 (1917)], has discussed the distinction between traffic offenses of a petty character, subject to summary proceedings without indictment and trial by jury, and those of a serious character, amounting to public nuisance indictable at common law; and its examination of the subject makes clear that the offense now under review is of the latter character.

> An automobile is, potentially, a dangerous instrumentality, as the appalling number of fatalities brought about every day by its operation bear distressing witness. To drive such an instrumentality through the public streets of a city so recklessly "as to endanger property and individuals" is an act of such obvious depravity that to characterize it as a petty offense would be to shock the general moral sense.

*Id.* at 73, 51 S.Ct. at 53. Clearly, the Court's prime consideration was the seriousness of the offense; the fact that it had been indictable at common law was considered as only a single factor. The favorable reference to the *Rodgers* case is, however, of some concern to the instant adjudication.

In *Rodgers,* New Jersey's highest court held that a person charged with driving while intoxicated did not have a right to trial by jury. Treating the offense as charging no more than disorderly conduct, the court first found that it was not indictable at common law. Then, because the lower court had held the violation to be one in the nature of a public or common nuisance, which had been indictable at common law and accompanied by a right to trial by jury, the court compared the essential elements of common law nuisance and driving while intoxicated. It found that conviction of the former required proof of an additional element—"inconvenience or annoyance to the public"—and was thus not comparable to the latter. Having determined that driving while intoxicated was not indictable at common law, the New Jersey court reversed the lower court's determination that the defendant was entitled to a jury trial.

*Rodgers* may be distinguished on the ground that the offense there at issue was the violation of a statute which declared that any person who operated a motor vehicle while intoxicated "shall be adjudged to be a disorderly person." 102 A. at 434. The court twice referred to the offense as one of "disorderly conduct merely." *Id.* at 434 & 435. In *Frankfurter,* the *Rodgers* case was described as one in which the conviction "of a drunken driver under a statute carrying a maximum sentence of six months for such 'disorderly persons'" was upheld. *Frankfurter, supra,* at 952. Thus, the offense as it was characterized and treated by the court in *Rodgers* and the one at issue here are different. This Court, however, need not rely upon this distinction.

Of far greater significance is the fact that this Court fundamentally disagrees with the rationale for decision in *Rodgers* and rejects it as entirely too rigid and narrow in its scope. The *Frankfurter* article referred to the case as one of a long line of New Jersey decisions which used "[t]he general distinction between offenses indict-

**8.** This specific language was quoted with approval in *Cheff v. Schnackenberg,* 384 U.S. 373, 389 n.7, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966) (Douglas, J., dissenting).

able and non-indictable at common law as a test of the validity of summary procedure." *Id.* at 952 n.184. The article then analyzed a later New Jersey decision, *Katz v. Eldredge,* 97 N.J.L. 123, 117 A. 841 (1927), because it was thought to be "particularly significant" in presenting "square differences of outlook on the use of historical material affecting petty crimes in modern constitutional interpretation." *Id.* at 953. Describing the *Katz* opinion, Frankfurter and Corcoran wrote:

> For the minority, Chancellor Walker contended that the specific instances of summary jurisdiction prior to the New Jersey Constitution definitively controlled the crimes and the amount of punishment within the petty offense exception implied in the requirement of jury trial in criminal cases. On the other hand, Mr. Justice White, for the majority, extracted from the specific instances, a principle of persisting vitality:
>
>> "I think the real underlying historically established test depends *upon the character of the offence involved rather than upon the penalty imposed.* The offence must be a petty and trivial violation of regulations established under the police power of the state in order that the offender may be summarily tried, convicted, and punished without indictment ·by a grand jury and without trial by a petit jury . . . . [T]he theory, as I understand it, which gave rise to the distinction at common law and in subsequent statutes, is that the convenience and benefit to the public resulting from a prompt and inexpensive trial and punishment of violations of petty and trivial police power regulations are more important than the comparatively small prejudice to the individual resulting from his being deprived of the safeguard of indictment before having to answer and of trial by a jury when held to answer. This, of course, is the converse of the rule with regard to serious offences, crimes and misdemeanors, where, for the preservation of the liberties of the people, the security afforded the individual by his right to trial by jury is

more important than the mere convenience of the public arising from a speedy and inexpensive summary trial."

*Id.* at 953–54, *quoting Katz,* 97 N.J.L. at 151, 117 A. at 852 (emphasis added).

The point made by the authors is that the inquiry of the court in *Rodgers* and preceding New Jersey decisions was too restrictive. The sole criterion used in *Rodgers* to determine the availability of a jury trial to the accused was whether the crime was one *historically* indictable at common law. In contrast, Frankfurter and Corcoran approved of the broader analysis presented in the *Katz* case, whereby the seriousness or triviality of the violation was determinative rather than a simple reference to the treatment of the offense or similar offenses in pre-revolutionary common law.

Returning to the *Colts* opinion, this Court believes that it is rather ironic that, even as the Supreme Court was citing *Rodgers* favorably, it was employing a method of analysis eschewed by the New Jersey court. The focus in *Colts* was solely on the "nature of the offense," i. e., whether it should be considered to be "petty" or a "serious" crime. Although the Court treated the common law background as a valid factor for consideration, the basis for the final decision was the reprehensible nature of the violation. The Court's holding in this regard is best summarized by its treatment of the offense as one which "in its very nature" was *"malum in se,"* as opposed to "merely *malum prohibitum."*

Accordingly, this Court holds that no individual factor is determinative of the question presented here. The seriousness of the offense is crucial and all relevant factors must be considered. The conclusions of the entire preceding discussion have been succinctly set forth by Justice Douglas, dissenting from the Court's decision in *Cheff v. Schnackenberg,* 384 U.S. 373, 387–91, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966). He summarized the proper approach to this issue as follows:

> The principal inquiry . . . relates to the character and gravity of the of-

fense itself. Was it an indictable offense at common law? Is it *malum in se* or *malum prohibitum*? What stigma attaches to those convicted of committing the offense?

. . . The relevance of the sentence . . . is that it sheds light on the seriousness with which the community and the legislature regard the offense.

*Id.* at 390–91, 86 S.Ct. at 1529 (footnote 7 omitted). These queries framed by Justice Douglas encompass the principles of common law which the Court must now apply to the instant case.

Ben Berkley Woods stands charged with driving while intoxicated. The Court is unaware whether such an offense was indictable at common law. The only case known by the Court to have addressed this question is *Rodgers, supra,* and, as previously indicated, it is this Court's opinion that the New Jersey court treated the offense there at issue as one of disorderly conduct rather than driving while intoxicated. A review of *Frankfurter* has also failed to shed light on the question. Nevertheless, the Court believes that this inquiry, even if it could be pursued to an accurate conclusion, is irrelevant to the instant action.

At common law prior to 1776, any charge of driving while intoxicated must have involved horsedrawn or simple horseback transportation. Considering the limited speed of such animal-powered conveyance, it is doubtful that any such offense would have generated significant alarm among the citizenry. In contrast, the incredible destruction caused by modern automobiles is the subject of daily comment in the press, on television and radio, and among the populace. Therefore, it is this Court's belief that no valid analogy can be drawn between traffic offenses involving more primitive modes of transportation and those committed in the heavy and powerful motor vehicles of today.

The penalty to which Woods is exposed is no more than six months imprisonment, a fine of $500, or both. This penalty has been

set by the Secretary of the Interior by virtue of authority vested in him by Congress, 16 U.S.C. § 3, and might be said to be relatively light.[9] In its search for "objective criteria reflecting the seriousness with which society regards the offense," the Supreme Court has often reiterated its position that "the most relevant such criteri[on is] the severity of the maximum authorized penalty." *Baldwin, supra,* 399 U.S. at 68, 90 S.Ct. at 1888, *citing Frank, supra,* 395 U.S. at 148, 89 S.Ct. 1503; accord *Duncan, supra,* 391 U.S. at 159–61, 88 S.Ct. 1444; *Clawans, supra,* 300 U.S. at 628, 57 S.Ct. 660. The Court's rationale for this conclusion is obvious: Where a statutory penalty has been set, "the legislature [as the representative of the community] has included within the definition of the crime itself a judgment about the seriousness of the offense." *Frank, supra,* 395 U.S. at 149, 89 S.Ct. at 1505; *see Duncan, supra,* 391 U.S. at 162 n.35, 88 S.Ct. 1444. In the instant case, the statutory penalty represents not a considered "legislative judgment as to the seriousness of the crime," *id.,* but rather a decision by a single, non-elected, presidential appointee—the Secretary of the Interior. As a consequence, the Court cannot ascribe as much weight to the severity of the statutory penalty for this offense as would ordinarily be required.

Beyond the prescribed punishment, the Court may properly examine, with regard to the offense of driving while intoxicated, "the laws and practices of the community taken as a gauge of its social and ethical judgments." *Clawans, supra,* 300 U.S. at 628, 57 S.Ct. at 663; *accord, Duncan, supra,* 391 U.S. at 161, 88 S.Ct. 1444; *Baldwin, supra,* 399 U.S. at 70, 90 S.Ct. 1886. In the Court's opinion, the most relevant of such "existing laws and practices" are those of Maryland, because it is in Baltimore, Maryland that Woods is employed and has his residence. In Maryland, the prohibition against driving while intoxicated is found at Md.Ann.Code, Transp. art. § 21–902(a), pursuant to which Woods was originally

---

**9.** The Court is, of course, aware that under *Baldwin, supra,* if defendant's exposure was one day greater in length, the offense would be

conclusively deemed "serious" and a right to jury trial would attach.

charged. *See* note 1 *supra.* The maximum punishment for a violation of this provision is a fine of not more than $1,000, imprisonment for not more than one year, or both for a first offense and for any subsequent offense a fine of not more than $1,000, imprisonment for not more than two years, or both. *Id.* at § 27–101(h)(1) & (2) (1977 Supp.).[10]

These penalties are an objective standard, conclusively demonstrating the seriousness with which the State of Maryland treats the instant offense. Yet these are not the only consequences of a conviction for driving while intoxicated in Maryland. Md. Ann.Code, Transp. art. § 16–205(a)(1) allows the Maryland Motor Vehicle Administration to revoke the license of any individual who is convicted of a violation of § 21–902(a). Moreover, the Maryland Motor Vehicle Administration is required to "maintain a point system for the refusal, suspension, or revocation of drivers' licenses . . . ." *Id.* at § 16–401. Upon conviction of driving while intoxicated the maximum penalty of

twelve points is assessed against the violator. *Id.* at § 16–402(a)(21). Section 16–404 provides: "The Administration shall: . . . (3) . . . (ii) Revoke the license of each individual who accumulates 12 points."

■ The Court is cognizant of the theory that the revocation of a driver's license under a point system, such as Maryland's, is only a collateral or incidental consequence, mandated "not as punishment but in a proper concern for public safety on the highways." *Ferguson v. Gathright,* 485 F.2d 504, 508 (4 Cir. 1973), *citing Smith v. State,* 17 Md.App. 217, 235, 301 A.2d 54, 64 (1973).[11] Nevertheless, the Court believes that it is appropriate to consider a collateral consequence of such impact[12] in an effort to gauge "the social and ethical judgments" of Maryland with regard to this offense and thus to aid in its categorization as either "petty" or "serious." The loss of driving privileges which is an automatic collateral consequence[13] upon conviction for driving while intoxicated lends strong, though per-

---

**10.** In view of these prescribed penalties, whether charged with a first or subsequent violation, if this prosecution had been brought in a Maryland court, Woods would have had a constitutional right to a jury trial. *Baldwin, supra.* If so charged, Woods would, however, have had no need to press his constitutional argument, because the State of Maryland deems any offense carrying a possible punishment of more than three months imprisonment to be serious enough to warrant interposing a jury between a defendant and conviction. Md.Ann.Code, Cts. & Jud. Proc. art. § 4–302(d)(2).

**11.** The Fourth Circuit's ruling in *Ferguson* may be used as part of the major premise in an enlightening syllogism: Revocation of a driver's license evidences "a proper concern for public safety." The offense of driving while intoxicated, upon conviction, commonly results in revocation of the driver's license. Therefore, the offense of driving while intoxicated represents an inherent danger to the public safety. Consequently, while it could be argued that the crucial factor which led to the grant of a trial by jury in *Colts* because of its presence and to the denial of that right in *Rodgers* because of its absence was "danger to property and individuals," that element, although not stipulated in its definition, is present with regard to the instant offense.

**12.** To the extent that the Maryland Court of Special Appeals in *Smith, supra,* 301 A.2d at 65, remarked to the contrary, this Court is not

bound by that opinion and must respectfully disagree with its conclusion in this regard. In *Baldwin, supra,* the Supreme Court reflected upon the serious consequences which could flow from conviction of an offense, for which the maximum punishment did not exceed six months confinement:

> Indeed, the prospect of imprisonment for however short a time will seldom be viewed by the accused as a trivial or "petty" matter and may well result in quite serious repercussions affecting his career and his reputation. Where the accused cannot possibly face more than six months' imprisonment, we have held that these disadvantages onerous though they may be, *may be outweighed* by the benefits that result from speedy and inexpensive nonjury adjudications.

399 U.S. at 73, 90 S.Ct. at 1890 (emphasis supplied). This passage clearly indicates that all consequential disadvantages which may result upon conviction of an offense should be weighed in determining the right of an accused to a trial by jury. *Accord, Parham v. Municipal Court,* 86 S.D. 531, 199 N.W.2d 501, 504 (1972).

**13.** *But see* Md.Ann.Code, Transp. art. § 16–405, which allows for certain exceptions to automatic revocation where the retention of the defendant's driving privilege is important or essential to his employment.

haps unnecessary, support to the conclusion that driving while intoxicated is a very "serious" crime in Maryland. The Court readily agrees with the statement that "the use.of the automobile [is] a necessary adjunct to the earning of a livelihood in modern life . . .." *Berberian v. Lassier,* 87 R.I. 226, 139 A.2d 869, 872 (1958), *quoted with approval in Schecter v. Killingsworth,* 93 Ariz. 273, 380 P.2d 136 (1963).

The Court has neither the time nor the resources at hand to ascertain the statutory treatment accorded the instant offense by all of the states in the nation. The appellate courts of several of the states have addressed the question of whether a person accused of driving while intoxicated has a right to trial by jury. The Court is also unable to evaluate each of these decisions. However, some information on this point is provided in *Annotation: Right to Trial by Jury in Criminal Prosecutions for Driving While Intoxicated or Similar Offenses,* 16 A.L.R.3d 1373 (1967 & 1977 Supp.). A quick tabulation of the cases collected there indicates that at least six state appellate courts have accorded those accused of this offense a right to a jury trial, viz, Arizona, Maryland,[14] Minnesota, Ohio, South Dakota and Washington.[15] Florida also grants a jury trial in this situation, but apparently only where the offense is charged under a state statute as opposed to a municipal ordinance. In contrast, only Louisiana and New Jersey seem to have definitely rejected a right to trial by jury for this offense. As just stated, Florida agrees with this viewpoint only when the charge is based on a local ordinance. Similarly, Nebraska and New Mexico deny the right, apparently on

the basis that "prosecutions under ordinances . . . may proceed without a jury." *Id.* at 1379.

Of the state decisions just mentioned, a few deserve closer attention. Of course, the New Jersey line of authority[16] stems from the *Rodgers* case and the approach adopted there has already been criticized in this Memorandum Opinion. Another of the adverse decisions, *City of Monroe v. Wilhite,* 255 La. 838, 233 So.2d 535, *cert. denied,* 400 U.S. 910, 91 S.Ct. 136, 27 L.Ed.2d 150 (1970), was discussed in *Brady v. Blair,* 427 F.Supp. 5 (S.D.Ohio 1976), as holding "that the maximum penalty for a crime is the only relevant criterion in the determination of the issue." *Id.* at 10. Judge Kinneary's comment in *Brady* regarding the *Wilhite* opinion by the Supreme Court of Louisiana is accurate; consequently, this Court cannot accept the rationale of the latter decision.

In contrast, the opinion by the Arizona Supreme Court in *Rothweiler v. Superior Court,* 100 Ariz. 37, 410 P.2d 479, 16 A.L.R.3d 1362 (1966) (en banc), is very instructive. The court there considered both the prescribed statutory punishment (not more than six months imprisonment, plus fine) and the collateral consequences (suspension of driving privileges for not more than 90 days) in deciding that "the severity of the penalty . . . may be regarded as 'so harsh' as to bring the charge into the serious offense or major crime classification triable by jury." *Id.* at 484, 16 A.L.R.3d at 1369. Of far greater import is the following language of the court:

It must be accepted that under present-day conditions driving an automobile

---

14. In *Wilson v. State,* 21 Md.App. 557, 321 A.2d 549 (1974), the Maryland Court of Special Appeals held that a charge of driving while intoxicated entitled the defendant to a jury trial solely because it subjected the accused to a possible punishment of one year imprisonment and a fine of not more than $1,000 or both. The relevance of the severity of the penalty in Maryland for this offense has already been addressed, and the court's opinion in *Wilson* sheds no further light on the issue herein under consideration.

15. According to the *Annotation, supra,* at 1977, Wisconsin also accords such a defendant a jury

trial, but analysis of the decision makes it clear that the holding of the Wisconsin court is inapposite here. *State ex rel. Keefe v. Schmiege,* 251 Wis. 79, 28 N.W.2d 345 (1947). In contrast, the *Annotation* does not mention the decision of the Alaska Supreme Court in *Baker v. City of Fairbanks,* 471 P.2d 386 (Alaska 1970), which appears to ensure the right to a jury trial for any offense, presumably including driving while intoxicated, for which the defendant may be forced to forfeit his driver's license.

16. It is noteworthy that the most recent New Jersey cases cited in the *Annotation* date to 1926. *Id.*

while under the influence of intoxicating liquor is an offense of a serious nature. The offense is a matter of statewide concern . . . and its moral quality has become offensive to the public as demonstrated by the severity of the punishment. Such conduct is repugnant to the community as well as the law because of the potential harm and evil that may result from such practice. The power to imprison, fine and suspend the right to use the public highways must be considered today as the ability to impose grave criminal sanctions not comparable to petty crimes at common law which were tried summarily. In view of the foregoing considerations, we find the offense in question to be a serious crime which must be triable before a jury when properly demanded.

*Id.,* at 485, 16 A.L.R.3d at 1370; *accord, Parham v. Municipal Court,* 86 S.D. 531, 199 N.W.2d 501, 505 (1973).

In sum, the Court has thus far determined:

1. In light of the following factors, in the opinion of Congress the offense here at issue is not a "serious" one:

(a) Congress has defined petty offenses solely by reference to the prescribed penalty, i. e., those for which the permissible punishment does not exceed imprisonment for a period of six months, a fine of $500, or both, 18 U.S.C. § 1(3);

(b) There are strong negative indications that a jury trial is not statutorily accorded for such offenses; and

(c) By reference to its penalty, a violation of 36 C.F.R. § 50.28(c) falls within Congress' definition of petty offenses;

2. Although the severity of the penalty for the offense does not solely determine the result, it is usually the most relevant criterion;

3. However, because the maximum punishment upon conviction of a violation of 36 C.F.R. § 50.28(c) was set by the Secretary of the Interior rather than by a legislature, the Court will not ascribe as much weight to this factor as is ordinarily mandated;

4. The defendant's exposure to no more than six months confinement, a $500 fine, or both is significant, despite the fact that it may be described as "relatively light;"

5. It is undetermined and, in fact, irrelevant whether the instant offense was indictable at common law prior to 1776;

6. In any event, it is the "principles" of common law which are important and those "principles" were best summarized in *Frankfurter, supra,* as follows:

Broadly speaking, acts were dealt with summarily which did not offend too deeply the moral purposes of the community, which were not too close to society's danger and were stigmatized by punishment relatively light;

7. The adverse decision on point in *Rodgers* is distinguishable, and, furthermore, the Court believes that the standard of judgment applied therein is incorrect;

8. The State of Maryland, which provides the most relevant community standard inasmuch as Woods lives and works here, regards this offense as very "serious" as shown by the severity of both the punishment and the collateral consequences for the offense under state law; and

9. The state court decisions on the issue are split, though slightly favoring the existence of the right, and the better reasoned of these opinions grant the defendant a trial by jury.

The final factor to be considered by the Court is whether the offense is *malum in se* or *malum prohibitum.* Without hesitation, this Court holds that the offense of driving while intoxicated is a *malum in se* offense. The lengthy quotes from both the United States Supreme Court in *Colts* and the Arizona Supreme Court in *Rothweiler* set forth earlier in this Memorandum Opinion clearly support this decision. Additionally, two United States Districts Courts seem to concur in this conclusion. In *Brady, supra,* the defendant had been denied trial by jury in a state court for the offense of driving while intoxicated, found guilty and imprisoned therefor, and then petitioned the federal court to issue a writ of habeas corpus in his behalf. In granting the petition, Judge Kinneary wrote:

[T]he offense cannot be said to be petty from the perspective of either the convicted defendant or the public. The crime is a serious offense and one in which this petitioner had a federal constitutional right to trial by jury.

427 F.Supp. at 10.

In *United States v. Barner,* 195 F.Supp. 103 (N.D.Cal.1961), the issue presented was whether the roadway on which the accused was apprehended for driving while intoxicated could be considered to be a state highway. Although the case is legally inapposite to the instant action, the court's evaluation of the offense of driving while intoxicated is uncompromising:

> Whoever drives under the influence of intoxicating liquor risks death and destruction, not only for himself and his property, but for the person and property of innocent bystanders as well. Under these circumstances, it is apparent that such a person is guilty of an innately reprehensible act, which every reasonable person would decry. And this such a reasonable person would do regardless of whether the act was proscribed by statute. The offense is, in truth, *malum in se.* He who drives while under the influence of intoxicating liquor drives at his own risk, in more ways than one. If such a driver is doubtful about whether a particular way is a highway, he will do himself and the public at large a service by staying off of it.

*Id.* at 108.

This Court is in total agreement with these sentiments. In modern society, with highspeed roadways and heavy and powerful motor vehicles, a person who is driving while intoxicated is unquestionably a hazard to society. The reality of this danger may strike an innocent person at any time with little or no warning and the consequences can be devastating to both driver and victim. In short, the offense prohibited by 36 C.F.R. § 50.28(c) is a "serious" crime, for which an accused must be accorded a right to trial by jury, and this Court so holds.